## BULKLEY and others *against* THE DERBY FISHING COMPANY.

Banks, and other corporations of a similar nature, authorized by their act of incorporation to contract in a particular mode, may, by a course of practice, render themselves liable on instruments executed in a different mode.

THIS was an action on a policy of insurance, on the ship *Charles,* from *New-York* to *St. Bartholomews.*

*Hartford,*
November,
1817.
Bulkley
*v.*
The Derby
Fishing
Company.

The cause was tried at *New-Haven, August* term, 1817, before *Edmond* and *Smith,* Js.

On the trial, the plaintiffs read in evidence, a policy corresponding with that declared upon, signed " *Canfield Gillet,* president," and countersigned " *Nathan Wheeler,* assistant." It was admitted, that the policy, when delivered to the plaintiffs, was signed and executed in this manner ; that the signatures of *Gillet* and *Wheeler,* with the respective additions, were genuine ; and that they held the offices in the company, designated by those additions. In the progress of the trial, the defendants objected to the policy's being permitted to go to the jury as evidence, because it was not countersigned by *Samuel J. Andrews,* who, it was admitted by the plaintiffs, was the secretary of the company at the date and delivery of the policy. (*a*) To obviate this objection, and to shew that the defendants had adopted the policy, the plaintiffs offered to read the correspondence between the parties, at the time of effecting the insurance ; the notes given for the premium by the plaintiffs to the defendants ; the book of records of policies of insurance on vessels, kept by the defendants, in which were recorded two or three policies, attested by the clerk of the company, and not by the secretary, and a number of others, signed by the president, and countersigned by the assistant, like the policy in question ; and the registry of the policy by the secretary of the company. The correspondence referred to consisted of—1. a letter from the plaintiffs, addressed to the defendants, enquiring what would be the rate of premium for insurance on the ship *Charles,* from *New-York* to *St. Bartholomews,* stating the condition of the ship, &c. ; 2. a letter in reply, stating the terms, signed " *Samuel J. Andrews,* secretary ;" 3. a letter from the plaintiffs, addressed to the president of the company, saying that they, the plaintiffs, would take the insurance, provided the company would return 5 *per cent.* in case the ship returned without loss ; 4. a letter in reply, saying that the directors would not recede from the terms previously offered, signed " *Samuel J. Andrews,* secretary ;" and 5. a note from the

(*a*) The act authorizing the company to pursue the business of marine insurance, provides, that "all policies of insurance made by said company, signed by the president, or in his absence, by the assistant, and countersigned by the secretary, shall be binding on said company according to the terms and tenor thereof." 1 *Stat. Conn.* tit. 70. c. 11. s. 1.

*Hartford,*
November,
1817.

Bulkley
*v.*
The Derby
Fishing
Company.

plaintiffs, closing with those terms.   The defendants object-
ed to the admission of this evidence, for the purpose stated ;
and the court rejected it.   There being no other evidence on
the part of the plaintiffs, the court directed the jury to find
a verdict for the defendants ;   which they accordingly did.
The plaintiffs moved for a new trial, on the ground that the
evidence offered by them was improperly rejected ; and the
questions arising thereon, were reserved for the considera-
tion and advice of the nine Judges.

*Daggett* and *Staples,* in support of the motion.   They
referred to 2 *Bac. Abr.* 13. (*Gwil.* edit.)   *Danforth* v. *Scho-
harie and Duanesburgh Turnpike Road,* 12 *Johns. Rep.* 227.
230, 1.   *Spear & al.* v. *Ladd,* 11 *Mass. Rep.* 94.   *Hayden
& al.* v. *The Middlesex Turnpike Corporation,* 10 *Mass. Rep.*
397. 400 *& seq.*

*N. Smith* and *Bristol,* contra.   They cited *Head* and
*Amory* v. *The Providence Insurance Company,* 2 *Cranch* 127.
166 *& seq.*   *Beatty* v. *Marine Insurance Company,* 2 *Johns.
Rep.* 109. 114.

SWIFT, Ch. J.   In the acts constituting banks and other
corporations, regulations are made with regard to the mode
in which they are to transact their business, and render their
engagements obligatory.   To enable them to enforce the
engagements made for their benefit, they must act within
the scope of their authority, and conformably to the direc-
tions of law.

In all cases, where banks, and similar corporations, conform
to their charter, their acts are binding on them.   So in cases
where they do not conform literally to their charter, they
may be liable.   Suppose a banking corporation should, by a
vote, agree to issue bills in a different form, or with different
signatures, from those prescribed ; they would, by their own
act, be rendered liable to pay them.   If such a corporation,
without a vote, should introduce a usage and practice in the
transaction of their business different from that prescribed
by law, they would, by the same reason, be rendered liable.
For though such conduct might be improper in itself, yet the
bank cannot take advantage of their own wrong to avoid
their contracts.   It cannot be supposed, that in general,

*Hartford,*
November,
1817.

Bulkley
*v.*
The Derby
Fishing
Company.

those who dealt with them had knowledge of their deviation from the charter regulations ; and it is to be presumed, that they act according to law. If it be admitted, that banks may thus deviate, and then avoid their contracts, they would be enabled to practice the grossest frauds on the community ; especially, in a country where there is such an immense number of monied institutions as in this, and where it is practicable for very few to know the extent of their powers and regulations. Banks, like *individuals*, must be liable in the character which they hold out to the world ; and whatever may be the forms of their obligations, if they are according to their charter, their corporate votes, or their known usage and practice, they ought to be binding.

A corporate act is not required in all cases. It is sufficient if there be a usage and practice under such circumstances as may be presumed to be within the general knowledge, and by the consent of the company. Nor can the stock-holders, or members of the company, be subjected to any inconvenience or damage. If any officer, vested with certain powers, should, in any instance, violate them, and attempt illegally to subject the corporation to any obligation, such corporation may instantly, on the discovery, disavow the act, and prevent a repetition. And then, as there will be neither law nor usage to sanction the transaction, it will not be binding. But where the corporation will suffer such practice to continue, it is to be presumed, that it is done with their consent, and be made obligatory on them. In the present case, it appears to me, that the evidence offered conduced to prove, that it was the usage and practice of this company to underwrite policies of insurance, and draw bills of exchange in the form now under consideration ; and, of course, that it ought to have been admitted. Whether the evidence offered would have been sufficient to have satisfied the jury of the fact, is not now the question. We have only to decide on the relevancy ; the jury must decide on the sufficiency of the testimony.

I am of opinion, that a new trial ought to be granted.

TRUMBULL, J. was of the same opinion.

EDMOND, J. dissented.

*Hartford,*
November,
1817.

*Bulkley*
*v.*
The Derby
Fishing
Company.

SMITH, J. did not agree with the Chief Justice on the ground taken by him, but acquiesced in the result, that a new trial ought to be granted, on the ground that the secretary had, in his correspondence with the insured, agreed to the policy in question, as explicitly and as fully, as though he had signed the policy itself; and had thereby afforded all that safety to the company, which the statute contemplates. Besides, his having afterwards registered the policy, is, of itself, a strong evidence of his approbation.

BRAINARD and GODDARD, Js. concurred in the opinion given by the Chief justice.

HOSMER, J. The evidence offered in this case, was rejected, on the ground that the policy ought to have been executed *literally* pursuant to the charter of incorporation. More than a century since, the case of *Rex* v. *Bigg,* 3 *P. Wms.* 419. went the full length of deciding, that as against a corporation, an authority to its agent, different from the prescriptions of its charter, might be implied. Although this decision has, on some occasions, been lost sight of; (2 *Cranch* 168. 2 *Johns. Rep.* 114.) yet it has been abundantly recognized by modern determinations, and is unquestionably established. 10 *Mass. Rep.* 397. 11 *Mass. Rep.* 94. 12 *Johns. Rep.* 230.

I consider it to be undoubted law, that a corporation may incur a liability different from the prescriptions of its charter. Like individuals, it is responsible in the manner in which it permits its agents to hold it out to the world. The corporation should disavow the practice, or the usages of their agents in the transaction of business shall be presumed to have their sanction. An authority to contract in a particular mode may be proved by a vote of the stockholders; and in prevention of fraud and prosecution of justice, it may be presumed. It may be implied from their acquiescence in the usual mode of transacting the business of the corporation, and expressing no objection against it; for *qui non prohibet, cum prohibere possit, jubet.* What is *usually* done by the agents of a corporation, in the transaction of the business confided to them, it is a fair presumption that the stockholders are cognizant of. Although they re-

side in different places, they have an interest in acquainting themselves with the proceedings of the corporation. The office where the business is done, is open ; the books of the company are subject to their inspection ; and it would be absurd to suppose them ignorant of those public facts, relating to the ordinary transaction of the corporate concerns, with which mankind in general are acquainted. In short, every transaction of the company, established by proof of direct authority from the stockholders, or implied from the usual modes of doing their business, which is not against law, or a prohibition contained in their charter, is obligatory upon them.

The testimony, in my opinion, should have been admitted ; and because of its rejection, I would advise a new trial.

GOULD, J. The question is, not whether the evidence, rejected at the trial, was such as would have been conclusive upon the defendants ; but whether it was admissible : And I am clearly of opinion, that it was so.

It is observable, that the company are not, in this case, *claiming a right*, through the agency of an individual, whose authority to act for them is denied, by the adverse party. It is, therefore, unnecessary to inquire, whether, in such a case, evidence, like the present, could be admitted in their *favour*, or not. Here, the demand is *against* the company, upon a contract, executed in their name, by *Gillet*, as president, and *Wheeler*, as assistant ; and both of whom, it is claimed, were the company's agents for that purpose. But to this claim it is replied, first, that by the terms of the act of incorporation, the company cannot be bound, by any contract, unless it is signed by the president, and countersigned by the *secretary ;* and therefore, that this policy, not being so executed, does not bind them, even admitting, that *Wheeler*, as assistant, was, *de facto*, employed as their agent for the purpose of countersigning.

A corporation certainly cannot, by its own act, enlarge its own capacities, powers, or rights ; but it would be strange to say, that it cannot thus voluntarily incur *liabilities*. If a corporation, by a corporate act, appoints an agent, under any name or title whatever, for the purpose of making, in its own behalf, any contract, which it has a right to make ; can the corporation itself impeach such a contract, made in

*Hartford,*
November,
1817.

Bulkley
*v.*
The Derby
Fishing
Company.

*Hartford,*
November,
1817.

Bulkley
*v.*
The Derby
Fishing
Company.

its name, by that agent, by alleging its own want of power to make such an appointment, or to contract by such an agent? The present objection must, to avail the defendants, go to this extent. But such a doctrine is in violation of all principle. A corporate body, by transgressing the limits of its charter, may, doubtless, incur a forfeiture of its privileges and powers; but who ever imagined, that it could thus acquire an *immunity,* to the prejudice of third persons? The clause, in which the act of incorporation prescribes the mode of signing, contains no negative words; *i. e.* no provision that a contract, signed in any other mode than that prescribed, shall *not* bind the company. It would be highly unreasonable, therefore, to construe that mode as *exclusive,* to the injury of strangers—especially, as the statute is not, in its nature, a public one, and third persons are, of course, neither bound, nor presumed, to know its provisions. The case *ex parte Meymot,* 1 *Atk.* 196. though not in point, contains a doctrine, which, I think, has an important bearing upon the present question. That was an application to the lord chancellor, to supersede a commission of bankruptcy, which had been taken out against the petitioner—he being a *clergyman.* The application was founded upon the statute 21 *Hen.* 8., by which clergymen are *prohibited,* under heavy penalties, from *trading;* and their contracts, as traders, are declared " utterly void, and of none effect." Lord *Hardwicke,* however, dismissed the petition; and among other things observed, " If a man, with his eyes open, will break the law, that does not make void the contract. It is, undoubtedly, very improper for a person to say, I have broke the law, and therefore, I am exempt from any remedy, a creditor may have against me." " I am inclined to be of opinion, that the contract shall be void, as to the *parson himself only;* for it would be a most extraordinary construction of the statute, that the bargain shall be void, *for his own benefit;* and it would be very mischievous to construe the act in such a manner." " Shall the bargain be void, for the *parson's* benefit?" " This part of the act ought to be so construed, as to make it a penalty on *himself only.*" This reasoning, I repeat, applies strongly, by analogy, to the question before the court. And if the petitioner, in that case, was bound by his contract, notwithstanding the strong language of the statute of 21 *Hen.* 8.; *a fortiori,* it would seem,

*Hartford,*
November,
1817.

Bulkley
*v.*
The Derby
Fishing
Company.

ought the policy, in the present case, to bind the company, if *Wheeler* was actually their agent, for the purpose of countersigning—whether the contract was executed in the form prescribed by the act of incorporation, or not.

We come, then, to the second objection made by the defendants, *viz.* that a corporation aggregate cannot appoint an agent, except by *deed ;* and that therefore, no other evidence, than that of a deed, is admissible, to prove *Wheeler's* authority to countersign the policy. The first proposition is generally, though not universally true, as to *express* authorities ; but it applies to no other. If, then, the plaintiffs were attempting to prove a specific act of the company, expressly conferring upon *Wheeler* the authority, under which he is claimed to have acted ; the defendants might properly insist, that the fact could be proved in no other way, than by proof of a corporate act. But *implied* authorities, which are almost as familiar in the law, as implied promises, and which rest upon mere presumption, are always proved by circumstantial, or collateral facts ; and can be proved in no other way. Usual, or frequent practice, in business, is the ordinary evidence, in such cases. The general principle is, that one person, who, by permitting another to act, ostensibly, as his agent, has given him a credit, with the public, as such, shall, in favour of third persons, be presumed to have authorized the latter to act, in that character, and be precluded from averring the contrary. This presumption is established by proof of usage, or practice : As, that the one has been in the habit of acting in the name and behalf of the other, and that the latter has, either by positive acts, or by acquiescence, impliedly recognized the agency. And the presumption, to be available to any purpose, necessarily embraces all *legal requisites* to the creation of a valid authority. Hence, a deed, a by-law, or a record, may as well be presumed, as any other fact. *The Mayor of Kingston upon Hull* v. *Horner, Cowp.* 102.

It may be objected, that the usage, in this case, not being *ancient,* can afford no evidence of *Wheeler's* authority. But the rule, requiring a usage to be ancient, to found a presumption, is not in *pari materia.* When a title, or interest, is to be presumed from possession, enjoyment, or *user,* lapse of time is essential. But that rule has a different object, and is

Bulkley
*v.*
The Derby
Fishing
Company.

founded upon different principles, from any, involved in the present question. It is designed to quiet long and uninterrupted possession, enjoyment, or *user,* by discouraging stale and dormant claims ; and can have no application at all to questions like the present.

But how, it is asked, can the usage of a corporation, which is an invisible body, existing only in contemplation of law, be proved, or even known ? I answer, by the acts of its officers, or acknowledged agents, in the management of its ordinary concerns. This point was conceded by counsel, and decided by the court, in *Rex* v. *Bigg,* 3 *P. Wms.* 419. ; and in the case of *The Mayor of Kingston upon Hull* v. *Horner,* this species of evidence was admitted to establish a claim, in favour of a corporation. Now, the evidence offered in the present case, whether sufficient to prove the fact, or not, certainly conduces to prove, that *Wheeler* was in the habit of countersigning contracts, as agent for the company ; that his acts, in that character, have been recognized, as valid, by the proper officers of that body ; and that the corporation, knowing, or having, in its own books and records, the means of knowing, the fact, has acquiesced in his agency, and in the present instance, taken advantage of it, by retaining the premium note.

I am, therefore, clearly of opinion, that the evidence should have gone to the jury ; and that a new trial ought to be granted.

BALDWIN, J. gave no opinion, being interested in the funds of the *Derby Fishing Company.*

New trial to be granted.

Banks, and
other corporations of
a similar nature, authorized by their
act of incorporation to contract in a particular mode, may, by a course of practice, render themselves liable on instruments executed in a different mode.