NEW-YORK,
May, 1821.

PETRY *against* CHRISTY.

PETRY
v.
CHRISTY.

'THIS was an action of assumpsit tried before Mr. Justice *Woodworth*, at the *Herkimer* Circuit, in *June*, 1820, when a verdict was taken for the plaintiff, subject to the opinion of the Court, on the following case : the declaration was on a promissory note for one hundred dollars, drawn by the defendant, and payable to the plaintiff, (not to his order.) By a special endorsement, the note was assigned by the payee to *Frederick Getman*, to be collected at his own risk and expense. *Getman* was, therefore, the real plaintiff. The defence was an alleged want of consideration for the note ; or failure of the condition on which it was given. The facts, as they appeared at the trial, were, that *Petry* sold a negro man (*Tom*) and his wife and child, as slaves, to *Frederick Getman*, and took *Getman's* note for the price. Soon afterwards, in the fall of 1815, *Getman* told the negro (*Tom*) that if he would procure good notes to the amount of two hundred dollars, payable to *Petry*, to whom *Getman* was indebted for the negroes, and would give his own note to *Getman* for seventy-five dollars, he would immediately manumit the negro and his wife and child. The negro accordingly procured good notes to the amount of two hundred dollars, payable to *Petry* (of which the note in question formed a part,) and delivered the notes to *Getman*, his master. It appeared by a letter from *Petry*, dated 5th of *November*, 1815, that he approved of the notes as good: and agreed with *Getman* to accept them, to be applied on *Getman's* note to him.

On the 7th of *November*, 1815, *Getman* made out a formal instrument of manumission for the three slaves, and subscribed his name to it ; and, on the same day, procured from the overseers of the poor, a certificate that the slaves were of sufficient ability to provide for themselves. But *Getman* refused to deliver the instrument of manumission, and kept the papers in his own hands, until the 7th of *April*, 1818, when he delivered them to the town clerk to be recorded. During the time that he so held the papers, *Getman* exercised control and dominion over the negroes, as his slaves.

G., the owner of a slave, told him, that if he would procure good notes for 200 dollars, and give his own note for 75 dollars, he would immediately manumit and set free, him, his wife, and child; and the slave, accordingly, procured notes for 200 dollars, &c. which G. approved : and made out a deed of manumission, and procured the usual certificate from the overseers of the poor; but refused to deliver the deed, and kept it and the other papers in his hands for more than two years, during which time he held the man, his wife, and child, as his slaves. In an action brought on one of the notes so procured by the slave, and delivered to G. against the maker, it was held, that there was a failure of the consideration on which the notes were given, and that G. was not entitled to recover. It seems, that though the owner of a slave executes a deed of manumission, but does not deliver it to the slave, or to some person for his benefit, the manumission is not complete, and the slave is not free.

He hired out *Tom*, and received part of his wages. He told the negroes that " they were as much his slaves as ever they were ; and that he did not know but he should sell them." It was proved that during that time he did offer to sell them.

*Feeter*, for the plaintiff.

*Ford*, contra.

PLATT, J. delivered the opinion of the Court.—The note on which this suit is brought, was undoubtedly given by the defendant, in consideration of the promise of *Getman*, that he would " *immediately*" manumit the negroes ; and although the note is made payable to *Petry*, yet it is clear that the original contract was made by *Getman*, the present assignee, and holder of the note ; and there is no evidence that the note was ever delivered to *Petry*. The fair presumption from the evidence is, that it has remained in the hands of *Getman*, ever since it was given.

The points made are, 1st. That the want of consideration is no defence to the note *in the hands of the assignee* : and, 2d. That there has been *no failure* of consideration, because the negroes have, in fact, been manumitted.

I am decidedly against the plaintiff on both points.

An assignee of a promissory note in the usual course of business, who receives it without notice of a defect of consideration, is protected against such a defence. But it would be an outrageous perversion of the rule, to consider *Getman* as standing in that situation.

As to the second point : The promise on the part of *Getman* was to manumit the slaves *immediately* on receiving the notes, for two hundred dollars : and the case shows, that although the notes were delivered to him, in strict compliance with his proposal, yet he in fact refused to manumit the slaves, until two years and five months afterwards ; and in the mean time, treated them as his slaves.

I think it is clear, that until the certificate of manumission passed out of the hands of the master, by an actual delivery, the negroes continued to be his slaves. (Case of *Nan Mickle*, 14 *Johns. Rep.* 324.)

The note was to take effect *upon a condition* which has

not been performed. A delay of upwards of two years, was
a gross and material violation of the contract. In no case can time be deemed more essential. The note was made payable five months from its date: yet it remained a matter of entire uncertainty, for two years afterwards, whether the emancipation would ever be made. This delay operated as a fraud upon the defendant, because it deprived him of all means of procuring indemnity for this note, which he generously lent to the negroes, as the price of their freedom.

Even admitting that the manumission *was legally consummated*, without any delivery of the certificate; and that the negroes might have asserted their freedom, as soon as the paper was signed; yet I think it sufficient to bar this suit, that in fact, *Getman* claimed and exercised his power over them as master, and actually held them as slaves, in violation of his agreement, until he afterwards chose to deliver the certificate. Their *freedom* was the consideration for this note; of that freedom he wrongfully deprived them; and it would be an insult to the law, and to common sense, to say, that his restraint of their liberty was *illegal*, and therefore, it ought not to be objected to him, when he claims the price of that liberty.

The defendant is, therefore, entitled to judgment.