THE TRUSTEES OF THE ANTIPŒDA BAPTIST CHURCH IN LOWER ALLOWAYS CREEK IN THE COUNTY OF SALEM, *v.* JOHN MULFORD.

### IN ERROR.

1. An action of assumpsit may be maintained against a corporation aggregate upon an implied contract.

2. Where the name of the corporation is correctly stated at the commencement of the declaration thus, " The Trustees of the A. B. C. of &c." and in the subsequent part of the declaration it is alleged that " being indebted " they " the said Trustees undertook and promised," this is a sufficient allegation that the promise was made by the corporation, and not by the trustees individually.

3. It is not necessary to repeat the full name of the corporation at every recurrence in the declaration; reference in a clear manner to the name already given is sufficient.

*Dayton* for plaintiffs in error.

*Jeffers* for the defendant.

The following opinions were delivered,

EWING, C. J.—This cause comes before us on a writ of error to the Inferior Court of Common Pleas of the county of Salem. The record returned contains a declaration with several counts in assumpsit by John M, against the plaintiffs in error, for work and labor, journeys and attendance, goods, wares and merchandize sold and delivered, and for meat, drink, lodging and other necessaries, with a general demurrer, and joinder and a judgment in favor of Mulford the plaintiff below.

The plaintiffs in error insist that this judgment is erroneous and should be reversed on two grounds.

1. That an action of assumpsit cannot be maintained against them, in as much as no contract can be made by an aggregate corporation otherwise than an express contract under their common seal.

And it is necessary they should maintain this proposition in its full and broad extent to overthrow the judgment, for the question below arose on a demurrer to the declaration, and therefore if the corporation may be liable on any contract, or by any mode of proof which might be exhibited, within the limit of the declaration the judgment must be sustained. And whether Mulford intended to claim on an implied or express contract or by what mode of proof he proposed to evince the undertaking of the corporation, we are not permitted to enquire.

The doctrine that a corporation can act only by its common seal, and can enter into, or be bound by, no contract without that solemnity, claims to stand on grounds both ancient and venerable; cases in the year books of the 4*th Edw.* and 6*th,* 7*th and* 8*th Henrys.* But an examination of the subject in those cases will afford no great reason to admire the accordance and unanimity of the judges, the solidity of their reasons, or the sagacity of some of the distinctions they were led to recognize or establish. In general, it is said a corporation cannot do any acts of importance without deed, but they may employ one in ordinary services, as a butler, cook, or the like, or to make a distress on their behalf. They may speak in whispers, it seems, but not more audibly. An act in *pais*, it is said, they may not do without their common seal, yet they may do an act upon record, for they are estopped by the record to say it is not their act. They are allowed in such cases then, to speak and be heard in some other mode than by the common seal. Even the seal itself, by which alone it is sometimes said they are to speak and act, affords very equivocal evidence of common assent. For it may, *de facto* I mean, not *de jure*, be placed to an instrument by one of the members as perfectly as by the universal consent of the whole body. One, as well as the united force of all, may thus make it speak; and it is said that when the common seal appears to be affixed to a deed it is not necessary that the

15

The Baptist Church *v.* Mulford.

party producing the deed should prove by witnesses the fact of its having been regularly fixed, or that the major part of the corporation agreed; but that if it be alleged to have been fixed by the hand of a stranger that shall be proved by the party who alleges it, *Skinner*, 2.

It is not my intention however to, to call in question this ancient doctrine, or its applicability to the corporations of the times when it was adopted; but to ascertain the principle on which it rests and to examine how far it ought to govern at the present time and in the case before us. That an aggregate corporation acts and speaks by its common seal is rather figuratively than literally true. There must be acting and speaking, and the most efficacious acting and speaking before the use of the seal. The real effective words and deeds are those of the component members. The fixing of the seal is not, in itself, the assent of the body; the real assent must necessarily precede the fixing of the seal. The corporation is indeed an artificial, ideal, invisible person, and as such can neither think or act, but it is composed of divers actual members whose united voices form the voice of the corporation, and who alone, in fact and truth, think and act. The seal then, is not the act of the corporation, but the evidence of the act; is not the voice of the corporation, but the evidence that it has spoken. The fixing of the seal is a mode in which the invisible body, to use the language of Blackstone, (3 *Bl. Com.* 475) "manifests its intentions." The use of the seal is a mode prescribed by the common law whereby the will of the corporation or the united will of the parts may be declared, and by which the acts of the corporation may be exhibited. If then in the creation of modern corporations, and especially, if in the act of the Legislature under which the plaintiffs in error became incorporated, it shall be found that another mode of declaring the will of the body and evincing its corporate acts, is provided, the presence of a seal will no longer be found necessary to the existence or evidence of a contract. In the

statute to which I have referred, *Rev. Laws,* 475, it is enacted, in the 6th section, that such corporations may elect annually or oftener if necessary or expedient, one of their own members to be their president who shall keep the minutes and enter the orders, acts and proceedings of the corporation in a book to be kept for that purpose : and in the 9th section, that the proceedings, orders and acts of a majority of all the members of the said corporation, but not of a less number, shall be valid and effectual. In these sections then, is provided a mode whereby this corporation, these plaintiffs, may act, and what may be the evidence of such act ? An act of this corporation may be as fully and legally manifested by the entry in the book, as that of an ancient corporation by its common seal. This corporation may bind itself as fully and legally by an entry on this book, as a common law corporation by its seal. Hence an entry in this book would, against the corporation, be good evidence of a contract, and it necessarily results that the contracts of an agent, appointed in the same way for the transaction of business within the legitimate objects of their incorporation, would be coligatory on them. It will be readily seen also that on the same basis with the aid of the usual legal principles an implied promise may be sustained. In the case of *Fleckner* v. *The Bank of the United States,* 8 *Wheaton,* 357, *Justice Story* delivering the opinion of the court says, " Whatever may be the original correctness of this doctrine [that a corporation can only act through the instrumentality of its common seal] as applied to corporations existing by the common law, in respect to which it has certainly been broken in upon in modern times, it has no application to corporations created by statute whose charters contemplate the business of the corporation to be transacted exclusively by a special board of directors. And the acts of such body or board evidenced by a written vote, are as completely binding upon the corporation and as complete authority to their agents as the most solemn acts done under the corporate seal."

The decisions of the American Courts on this subject are marked with great and commendable uniformity; and the liability of corporations upon contracts not under seal, and made by themselves or their agents, and also on implied contracts is the settled law of Massachusetts, *Heyden and another* v. *The Middlesex Turnpike Corporation*, 10 *Mass. Rep.* 397; *White* v. *The West Point Cotton Manufacturing Company*, 1 *Pickering* 215; *The Proprietors of the Canal Bridge* v. *Gordon, ibid* 297. Of Connecticut, *Bulkley and others* v. *The Derby Fishing Company*, 2 *Conn. Rep.* 256; *Witte* v. *Same, ibid* 260. Of New York, *Danforth* v. *Schoharie Turnpike Company*, 12 *John* 231; *Dunn* v. *The Rector, &c., of St. Andrew's Church*, 14 *John.* 118; *Randal* v. *Van Vechten and others*, 19 *John.* 55; *Powell* v. *Trustees of Newburgh, ibid* 284; *Mott* v. *Hicks*, 1 *Cowen* 532. Of Pennsylvania, *The Overseers of the Poor of North White Hall* v. *The Overseers of the Poor of South White Hall*, 3 *Serg. and Rawle* 117; *The Chestnut Hill and Spring House Turnpike Company* v. *Rutter*, 4 *Serg. and Rawle* 6. And of South Carolina, *Waring* v. *The Catawba Company*, 2 *Bay.* 109; *Garvey* v. *Colcock*, 1 *Nott. and McCord* 231; as well as of the Supreme Court of the United States, *The Bank of Columbia* v. *Patterson's Administrators*, 7 *Cranch.* 299; *Fleckner* v. *The Bank of the United States*, 8 *Wheat.* 357; and so held in all, on common law principles, and not in consequence of any specific statute enactment. Kentucky alone adheres to the necessity of a seal, as appears by 3 *Marshall's Rep.* 1. In the case of the *Bank of Columbia* v. *Patterson's Administrators*, the following is laid down by *Justice Story* in delivering the opinion of the Court as the sound rule of law, and is said by him to be fully supported by adjudged cases—" Wherever a corporation is acting within the scope of the legitimate purposes of its institution, all parol contracts made by its authorized agents are *express* promises of the corporation; and all duties imposed

on them by law, and all benefits conferred at their request, raise *implied* promises for the enforcement of which an action may well lie."

In this Court the liability of a corporation on either an implied or express promise has not, so far as I am able to ascertain from either verbal or printed report, been expressly decided. Had such decision been found, it would have been received as evidence of the law and further investigation deemed unnecessary. Enough however may be found, from which inference is, I trust correctly, drawn that the opinions heretofore entertained are in perfect accordance with the sentiments now delivered. In the case of *The Inhabitants of Mendham* v. *Losey, in Error, Pen. Rep.* 347, which was an action brought by Losey in the C. P. of Morris, against the township in its corporate capacity, for work and labor done by him as overseer of the roads, one of the grounds urged by the counsel of the corporation against which judgment had been rendered, was, that an action of assumpsit could not be maintained against them, being an aggregate corporation. *Justice Pennington* decided against the plaintiffs in error on this point, and held that no corporate act under seal was required or necessary. The other Justices expressed no opinion on this head. In *Shotwell* v. *McKeown*, 2 *South.* 828, the action was brought on a promissory note purporting to be given by The Patent Cloth Manufacturing Company, signed William Shotwell, agent, and the Court reversed the judgment of the justice rendered against Shotwell, because he was not answerable in his individual capacity, and resolved that the holder of the note must " look to the company." In the case of *The Inhabitants of the Township of Saddle River* v. *Colfax*, 1 *Halsted* 115, this Court on certiorari sustained a judgment against the inhabitants of a township, in their corporate capacity, on a contract, not under seal, made by the overseers of the poor for the maintenance of paupers. The cause it is true

turned on the liability of the overseers of the township, and the question now before us does not appear to have been raised.

On this point then I am of opinion there is no error in the judgment of the Common Pleas.

2. The second ground presented for the reversal of the judgment is, that the declaration sets forth no promise by the corporation. "And being so indebted they the said Trustees," &c., " undertook and promised," &c., and not the said " The Trustees," and hence the promise charged is said to be, that of the individual trustees, not of the corporation.

This objection is not sustainable either on principle or on precedent. The argument is, that by the mode of expression the trustees in their individual, and not in their corporate capacity, are said to have made the promise. But such is not the just sense and force of the expression. " The said Trustees " on the most strict philological construction means the corporate body. At the commencement of the declaration the name of the defendants is fully and correctly stated, " The Trustees of the A. B. C. of L. A. C. in the county of Salem." In subsequent parts a direct reference is made to, the name thus distinctly stated, " the said trustees," &c. It is not necessary, at every recurrence, to repeat the full names of the parties; reference in a clear and plain manner to the name or names already given is sufficient. In modern approved precedents promises are laid by " the said defendants " to " the said plaintiffs;" the names and description as such having been set forth at the commencement of the declaration. 1 *Chitty Plead.* 256. 1 *B. and P. (new series)* 289. Here, it is alleged " the said trustees," &c., promised, and surely it would be a very remote and forced construction to make this an individual and not an official promise. It was argued, that if part of the name of a corporation is omitted, the name is wrong, for all is material; and this rule is doubtless true where it is necessary to state the name of the corporation, but not where it is suffi-

ciently shewn by reference. *Woolwich* v. *Forrest and others*, 1 *Pen.* 115, cited at the bar, does not bear on the present question. It proves that in a suit by or against a corporation, it should be corrrectly named ; and that if there be a variance between the real name and the name given in an obligation or other instrument, on which the suit is founded, the declaration should contain proper averments of identity ; but it does not prove that if in the writ and in the commencement of the declaration the proper corporate name is used, the same full name must throughout be repeated, and no abbreviation, however certain and descriptive, be adopted. In the case of the *Magor and Burgesses of Lynne Regis*, 10 *Co.* 120, the declaration is, in substance, as follows, "J. Payn late of, &c., executor of John P. late, &c., was summoned to answer to The Mayor and Burgesses of Lynne Regis in the county of Norfolk of a plea, &c., and whereupon *the said Mayor and Burgesses* by H. B. their attorney say that whereas the aforesaid John P. the testator in his life, on, &c., had granted himself to be bounden to *the said Mayor and Burgesses* in the aforesaid £3000 to be paid to *the said Mayor and Burgesses* when thereof he was required," &c. On a special verdict in this case an objection taken to an alleged variance between the name used and the real name of the corporation was overruled and judgment given for the plaintiff. The full name it will be observed is not repeated after the commencement of the declaration, and it might with equal propriety, as here, have been objected that the testator was alleged to have become bound to the Mayor and Burgesses in their individual and not in their corporate capacity. In the case of *London* v. *Lynn. Hen. Bl.* 260, the declaration begins, "The Mayor and Burgesses of the borough of Lynne Regis commonly called King's Lynn in the county of Norfolk, were summoned to answer the Mayor, Commonalty and Citizens of the city of London, of a plea wherefore, &c., and thereupon the *said Mayor,* Commonalty and Citizens of *the*

*said city*, by R. L., their attorney complain, &c. [In the declaration the corporate name is expressly alleged to be as above mentioned.] Yet *the said Mayor* and Burgesses not regarding the said writ, &c., and to the damage *of the said Mayor*, Commonalty *and Citizens* of £100, and therefore," &c. The plea begins, "and the said Mayor and Burgesses by J. L., their attorney come," &c. The case of the *Mayor and Burgesses of Stafford* v. *Bolton*, 1 *B. & P.* 40, was an action on the case by the corporation for tolls. The declaration began—"that whereas the town of Stafford in the county of Stafford is, &c., an ancient borough and the burgesses of the said borough from time immemorial have been a body politic and corporate, &c., and for divers, to wit, fifty years last past have been such body politic and corporate by the name of The Mayor and Burgesses of the Borough of Stafford." It then proceeded to state that "*the said Mayor and Burgesses* had been accustomed to repair the pavements, &c. and by reason thereof had been accustomed to receive a reasonable toll, &c., that thereupon *the said Mayor and Burgesses* demanded of the defendant &c.; that the said defendant refused to deliver the same to *the said Mayor and Burgesses*," &c. Here the full name of the corporation was not, on every occasion, repeated; and as the question in the cause turned on the corporate name, it is not probable objections of the present nature, if tenable, would have been overlooked. The following precedents may also be referred to. 1 *Wentworth*, 181; 5 *Went.* 163, 176, 182, 201, 255.

Upon the whole, the judgment of the Court of Common Pleas, ought, in my opinion, to be affirmed.

*Note*—Since the foregoing opinion was prepared, I have seen in *Simons' and Stuart's Reports* 520, the case of *Marshall* v. *The Corporation of Queensborough*, decided in December 1823 by the Vice-Chancellor of England. A bill was filed charging that the defendants had given a licence

to the complainant to fill up part of a creek and make a wharf and other buildings adjoining a piece of land he held under lease from them, in consequence of which licence he had with their knowledge taken possession and erected the wharf and buildings at his expense, and praying that they might be decreed to grant him a lease. The counsel of the complainant, on the hearing, contended that the corporation acting by a majority of its members and at a regular meeting and giving a licence to the complainant to do an act by which he incurred expense was thereby bound. For the defendants it was insisted that a contract to be binding on a corporation must be under the common seal and that no such contract was shewn. The case stated in the bill not being proved the bill was dismissed. But the Vice-Chancellor (*Sir John Leach*) said, that if a regular corporate resolution passed for granting an interest in a part of the corporate property and upon the faith of that resolution expenditure was incurred, he inclined to think that both principle and authority would be found for compelling the corporation to make a legal grant in pursuance of that resolution.

Ford J.—John Mulford brought an action in the Inferior Court of Common Pleas for the county of Salem against " *The Trustees of the Antipœda Baptist Church of Lower Alloways Creek in the county of Salem,*" and declared on an indebitatus assumpsit for work and labor done and performed, and materials found and provided for the corporation at their special instance and request to the amount of $200, in consideration whereof *they promised to pay,* &c. There were several more common counts, on a quantum meruit, for goods sold and delivered, quantum valebant, &c. The defendants put in a general demurrer to the declaration and the plaintiff joined in demurrer. After argument the court rendered *final* judgment for the plaintiff's damages. Upon a writ of error removing the judgment here, some difficulty arose concerning the record; but it was arranged

before the court between the parties, who agreed to the foregoing case. The counsel for the defendants then relied on two errors.

First, that there is a misnomer of the corporation. The declaration states that they, giving them their true name, to wit, "the Trustees of the Antipœda Baptist Church of Lower Alloway's Creek, in the county of Salem," were attached, to answer &c. and then. it proceeds, "For that, whereas, the *said* Trustees of the Antipœda Baptist Church of Lower Alloways Creek, in the county of Salem." It was argued that their name is *the Trustees* &c. not *the said Trustees ;* the word "*said*" effecting an *alteration and change* of name on the record from what it really is ; and that any variance is fatal in naming a corporation. But I think the objection cannot prevail because the word *said* is not used in that place as any part of the *name* of the corporation. Every body else sees it is not so used and why should the court see differently ? It is a word of *reference* to an antecedent name, and is used for a purpose directly opposite to what the objection imputes to it ; not to make a *variance,* but to signify the *same Trustees* before mentioned, in order to preserve *their identity,* and exclude the idea of a difference. It would be a perversion of the word to allow it any other office in this place. But the objection admits of a further answer. The most formal language of the count in that place would have been 'For that, whereas, the said *the* Trustees of' &c. so that it is an omission of the word "*the*" at the utmost, and the diminution of that word is amendable in affirmance of the judgment here, according to the act respecting amendments and jeofails, *sec. 2d and 3d, Rev. Laws* 137. The objection is therefore too light to prevail against the judgment.

The second objection is, that a corporation aggregate cannot contract unless by means of their common seal. According to *Justice Blackstone,* "A corporation, being an invisible body, cannot manifest its intentions by any *personal* act, or

*oral* discourse; it is the fixing *the seal,* and that only, which unites the several assents of the individuals who compose the community, and makes one joint consent of the whole," 1 *Bl.* 475. That such general theory has been maintained by courts and judicial writers, before and since the time of this commentary, in relation to corporations need not be disputed; but general rules are sometimes so inapplicable in human affairs, that the best of them could not be tolerated without numerous exceptions, in order to prevent inconsistencies, supply defective remedies, and advance public convenience. Accordingly this general doctrine is modified in many important particulars, both in ancient and modern decisions. Thus a corporation without seal, may give *personal commands and do small acts,* as to retain a servant, cook, butler &c. 4 *Com. Dig.* 258, 2 *Bac.* 13, *tit. corporation.* In like manner it may *surrender a lease* into the court of chancery to be cancelled, 10 *Rep.* 68, *third resolution.* It may authorize a clerk, *by parol,* to *sign its bank notes,* and to charge it for millions of money, *Rex* v. *Bigg.* 3 *P. Wms.* 419. It may generate an equity by entering on its register, without seal, an *agreement to give a lease,* 1 *P. Wms.* 655, *Taylor.* v. *Dullidge hospital.* Its *agreement entered on the corporation books* will be decreed against it in equity, 1 *Fonbl.* 306, *note* 0. It may give verbal licence to one *to collect its tolls,* 5 *East.* 239. If therefore it be invisible it has a *voice* to give personal commands, and *hands* to carry a lease; and though *Sir Edward Coke* gravely says it has no *soul,* still it has a conscience, and will be compelled to act according to good conscience. It is also capable, without seal, of doing *wrong acts;* it may receive money for the use of another and *retain it unjustly.* In short, corporations are now so multiplied that if they were not amenable to justice in some cases like natural persons, especially on *implied contracts,* founded on adequate consideration, society could not tolerate the frauds in business that they would have the ability to commit. The cashier and minor officers

of banks, seldom, and I believe never hold their salaries and appointments under the corporate seal, consequently they could recover no compensation; what is more mischievous to the public, the bank might disclaim their acts. The bank book given to A. in which he receives *credit for his deposits* is not an instrument under the corporate seal, and if he cannot maintain assumpsit on an implied promise for money had and received to his use he is remediless. That he may maintain such action on strict common law principle is however well settled. One Parbury, claiming £1000 stock of the bank of England, applied for liberty to transfer it and was refused; he applied for a mandamus, but the court refused it because a private action would give him complete redress; therefore he brought a special action of *assumpsit* for the value of the stock, and recovered a verdict before *Lord Mansfield*, without any objection that assumpsit would not lie on an implied promise against a corporation, or any pretence that the promise was not under seal, *Rex* v. *the Bank of England, Doug.* 506, *note* 1. These cases and decisions make it out to be a common law principle that assumpsit will lie against a corporation on an implied promise without the corporate seal. Could there be a greater anomaly than that the law should imply a promise against a natural person for the sake of justice, and not against a corporation when the reason is the same?

If we look at the decisions of superior courts in neighboring states, we find them uniformly recognizing it as common law. Cases in the state of New York are too numerous to be stated or to be all referred to; *see* 10 *Johns.* 484, 12 *ib.* 231, 14 *ib.* 118. It is the same in Massachusetts; *see* 3 *Mass.* 364, 10 *Mass.* 397.

I admit that the question has not had a direct and full decision in this state. It arose among four other points on which the cause might turn, in the case of *Mendham* v. *Losey*, and two of the justices reversed on another ground. They say indeed that there are several reasons on which the

judgment must be reversed, but they go on another, without any mention of this, which shews they deemed a full consideration of it then to be unnecessary. But *Justice Pennington* noticed the point and observed, that it was not universally true, even at common law, that a corporation aggregate could not contract unless under the seal of the corporation; he apprehended that an *assumpsit* would be raised *by implication of law* for the wages of a servant appointed without the corporate seal, and saw *no reason* why a quantum meruit would not lie, 1 *Pen.* 352. In rendering a judicial opinion without any difference on this point, it would seem to be a decision even in this state, in the same way that it has been so fully settled in New York and Massachusetts. But the point received a full determination in the Supreme Court of the United States, February term, 1813, in the case of the *Bank of Columbia* v. *Patterson's Administrator,* 7 *Cranch* 299. *Story J.* in delivering the opinion of that court says: "It would seem to be a sound rule of law, that whenever a corporation is acting within the scope of the legitimate purposes of its institution, all *parol* contracts made by its authorized agents are *express* contracts of the corporation; and all *duties* imposed on them by law, and all *benefits conferred at their request,* raise *implied* promises, for the enforcement of which an action may well lie." It is objected that this is not the law of New Jersey, nor was declared as such by the judge who delivered the opinion. The answer is, it was decided to be the common law, the principles of which are recognized in that court, and adopted in the constitution of this state. I am, therefore, of opinion that assumpsit on an implied promise might well lie against the trustees of this church in their corporate character, and that the judgment of the Common Pleas should be affirmed.

ROSSELL J. concurred.

Judgment affirmed.