Comstock, J.
The alleged agreement on which the suit is founded was to renew a policy of insurance from year to year in consideration of a premium to be annually paid, either party being at liberty to give notice at any time that the arrangement would not be continued. Such an agreement, although not in writing, is not void by the statute of frauds, on the ground that “by its terms it is not to be performed within one year from the making thereof.” (2 R. S., 135, § 2.) It is not the meaning of the statute that the contract must be performed within a year. If it can be so performed consistently with the language in which the parties have expressed themselves, in other words, if the obligation of the contract is not, by its very terms, or necessary construction, to endure for a longer period than one year, it is a valid agreement, although it may be capable of an indefinite continuance. An agreement, which either party can terminate at any time by a notice to the other, may be binding so long as the notice is not given, but it is not within the language or policy of the statute. (Plimpton v. Curtiss, 15 Wend., 336; Moore v. Fox, 10 John., 244; Fenton v. Embler, 3 Burr., 1278; 2 Parsons on Con., 316, and note.)
Aside from the objection just considered, contracts of insurance, whether executory or importing a present risk, arc not required by any statute to be in writing; and we are therefore next to inquire whether, if made by parol, they are valid upon general principles of law. A policy of insurance is a mercantile contract, having its origin in, and deriving-its incidents *308 from the usages and laws of commercial nations. In many of the countries of Europe the contract is required to be in writing by positive ordinances, which set forth minutely the circumstances and the stipulations which-it ought to express. (1 Duer on Ins., 61.) The same is true of marine insurances in Great Britain, a written policy being required by the stamp acts. (35 George III, ch. 63.) Such is also, undoubtedly, the usage in this country; and, indeed, the very term “policy ” imports that the party insured holds a written instrument to which that name has been given. It seems, however, that even in the continental countries of Europe, where formal policies are required by the codfes of public law, unwritten agreements to insure will, in some circumstances, be executed by the courts of justice. (3 Boulay Du Paty, 246; 2 Valin, 20; Pothier, Traite du Contrat d'Assurance, n., 96, 97.) In this State, we have no positive law on the subject. The .contract, as I have said, had its origin in mercantile law and usage. It has, 'however, become so thoroughly incorporated into our municipal system, that a distinction which denies the power and capacity of entering into agreements in the nature of insurances, except in particular modes and forms, rests upon no foundation. The common law, with certain exceptions, having regard to age, mental soundness, &c., concedes to every person the general capacity of entering into contracts. This capacity relates to all subjects alike, concerning which contracts may be lawfully made, and it exists under no restraints in the mode of contracting, except those which are imposed by legislative authority. There is nothing in the nature of. insurance which requires written evidence of the contract. To deny, therefore, that parol agreements to insure are valid, would be simply to affirm the incapacity of parties to contract where no such incapacity exists, according to any known rule of reason or of law. The Supreme Court of the United States, in a recent ■case in which the question directly afose, has determined that a parol agreement to make and deliver a policy of insurance, need not be in writing. (Commercial Mut. Marine Ins. Co. v. The Union Mut. Ins. Co., 19 How., 318.) We do not hesitate to *309 adopt .that conclusion, and it follows that the objection made at the trial to the agreement offered to be proved, so far as it rests upon this ground, cannot be maintained.
We come, then, to the question, whether the alleged parol agreement in this case was void by reason of any restraints contained in the charter of the defendants as a corporation. The defendants were chartered by an act of the Legislature passed in 1824. (Laws of 1824, ch. 166, p. 175.) The 1st section of the act declares that the company “ shall be in law capable [amongst other things] of contracting and being contracted with relative to the funds of the said corporation and the business and purposes for which the said corporation is hereby created, as hereinafter declared.” The 2d section declares “ that the corporation hereby created is so created for the purposes aforesaid, and shall have power and authority to make contracts of insurance with any person or persons, body politic or corporate, against loss, &c., for such times or time, and for such premium or consideration, and under such modifications or restrictions, as may be agreed on between the said corporation and the person or persons agreeing with them for such insurance.” The 10th section declares “ that the policies of insurance, and other contracts founded thereon, thereafter to be made or entered into by the said corporation, though not under seal, if subscribed by the president, * * and countersigned by the secretary, shall be binding and obligatory upon the said corporation, and shall have the like force and effect, to all intents and purposes, as if the seal of the said corporation had been or was affixed thereto.”
The argument on behalf of the defendants is, "that their charter, being the enabling act which alone authorized them to contract at all, and the 10th section having specified the mode of making contracts of insurance, all other modes and forms of making or agreeing to make insurance are necessarily excluded, and, hence, that the parol agreement alleged to have been entered into with the plaintiffs was unauthorized and void.
It needs no argument or authority to prove that corporations ■ must act within the powers conferred by the organic laws *310 under which they are created. It may also, for the present purpose, be conceded, that they can disaffirm the most solemn and meritorious engagements entered into by them in excess of those powers. These rules are not inconsistent with another, which is, that corporations, along with the express and substantive powers conferred by their charters, take by implication all the reasonable modes of execution which a natural person may adopt in the exercise of similar powers. The business of insurance, for example, is not, in its nature, a corporate franchise. Any person may engage in it, unless forbidden by law; and his contracts of that nature,, whether by parol or in writing, as we have seen, will be valid. So, when a general authority to engage in that business is given to a corporation in express terms, and there are no special restraints in its charter, it takes the power, as a natural person enjoys it, with all its incidents and accessories. It may bind itself in any mode and form of obligation which is not forbidden. If a private person can agree by parol to make insurance, so can a corporate body, unless the power of thus contracting is plainly denied to it by its organic law. That, the use of the corporate seal to attest its contracts is unnecessary, has long been settled.
Referring now to the charter of the defendants, we find, in the provisions above set forth, an authority to maleé contracts of insurance conferred in the most general terms. Unless the power thus given is specially restrained in the 10th section, it can be executed in any manner and form which the corporation may approve, and by any agents whom it may authorize to contract in its name. The power is to make “ contracts of insurance.” These may be in writing or by parol. They may be in the form of undertaking which imports a present risk completely assumed, or they may be executory, for the delivery of a policy or a renewal of a policy at a future day.
Does, then, the 10th section abridge the powers thus given, and confine the corporation to a particular mode of action, as well as to action through particular agents? We are clearly of opinion that it does not. This provision of the charter *311 merely declares that the contracts of the corporation, .without the corporate seal, and if signed and countersigned by the president and secretary, shall be valid and obligatory. Mow, corporations always and of necessity act by agents ;• and, in granting their charters, it is a-practice eminently convenient and proper, and, moreover, a very usual one, to specify the mode in which, and the agent or agents by whom, their contracts may be executed so as to bind the artificial body. Such a specification forecloses all question and doubt, and relieves the parties with whom contracts are thus executed from the burden of proving that the agents with whom they deal have acted by due authority. (Buckley v. The Derby Fishing Co., 2 Conn., 252; Safford v. Wykoff, 4 Hill, 446, 447, per Walworth, Chancellor; Barnes v. Ontario Bank, 19 N. Y., 152.) Such specifications do not subtract anything from the general powers which corporate bodies take under their charters. Within those powers, they may contract in other modes; and all the authority which they possess, they may delegate to other agents. That the Legislature may restrict them in these respects, is not denied; but restrictions of such a nature are founded in no policy, and they are rarely, if ever, imposed. They clearly are not contained in the charter under consideration.
It is further contended, that proof of the alleged agreement was inadmissible, on the ground that it was opposed to the stipulations for renewal contained in the written policy originally delivered, and would be in contradiction of the terms of that instrument. In the body of the policy, it was declared that the insurance (the risk not being changed) might be continued for such further term as should be agreed on, “ provided the premium therefor was paid and indorsed on-the policy, or a receipt given for the sameand in the conditions annexed and forming a part of the contract, it was set forth that no insurance, whether original or continued, should be considered as binding until the actual payment of the premium. These clauses of the contract cannot have the controlling influence which is claimed for them. A provision in a policy already executed and delivered so as to bind the company, declaratory *312 of a condition that premiums must he paid in advance, manifestly has no effect except to impart convenient information to persons who may wish to be insured. As such a provision in the policy in question could have no effect upon the delivered and perfect contract in which it was contained, so it could have none to prevent the same parties from making such future contract as they pleased. In any subsequent agreement for a renewal or continuation of the risk, it was competent for the parties to contract by parol, and to waive the payment in cash of the premium, substituting therefor a promise to pay on demand or at a future day. Proof of such an agreement would have no tendency to contradict or to change the written policy already in force between the parties, and which would be wholly spent before the new agreement could take its place. This is too plain to require further elucidation.
The judgment must be reversed, and a new trial granted.
Gray and Grover, Js., expressed no opinion. All the other judges concurring,
Judgment reversed, and new trial ordered.