JOHN J. HEAD, Appellant, v. SUPREME COUNCIL OF CATHOLIC KNIGHTS OF AMERICA, Respondent.

St. Louis Court of Appeals, December 24, 1895.

1. **Benefit Societies:** CHANGE OF BENEFICIARY. The validity of the substitution of a new beneficiary, in place of the one named in a certificate of a benefit society for the payment of mortuary benefits, must be determined by the terms of the certificate and of the charter and by-laws of the society. If these provide for the substitution of beneficiaries in a certain way, all other methods are excluded; and a substitution which is not in substantial compliance with the mode prescribed is invalid.

2. ———: ———: CONSISTENCY OF CHARTER AND BY-LAWS. A charter provision, that the benefits shall be disposed of as the member to whom the certificate is issued may direct, will not prevent the society from making reasonable regulations governing such disposition.

*Appeal from the St. Louis City Circuit Court.*—HON. P. R. FLITCRAFT, Judge.

AFFIRMED.

*T. J. Rowe* for appellant.

*O. J. & R. Lee Mudd* for respondent.

BIGGS, J.—The plaintiff claims to be the beneficiary under the following certificate issued by the defendant, to wit: "This certificate issued by the Supreme Council, Catholic Knights of America upon the life of William Ryan, a member of branch number 92, located at St. Louis, same county, state of Missouri, witnesseth: That, in consideration of the statements and representations made by said William Ryan in writing in his application for membership, dated at St. Louis, same county, state of Missouri, on the twelfth day of December, 1880, and the answer to, and representations made by said William Ryan to, the medical examiner at the place aforesaid (said medical examination and the record thereof and the said application hereto referred to and made a part of the contract), the said Supreme Council, Catholic Knights of America agree to pay Mary Ryan (wife), the beneficiary designated by said William Ryan in his said application (or to the beneficiary or beneficiaries that he may hereafter have a certificate made in favor of), on surrendering this certificate, and upon due proof of the death of said William Ryan, he being in good standing in the order, the sum of two thousand dollars; the said William Ryan expressly agreeing to pay all assessments, dues and fines assessed against him according to the laws, rules and regulations, of the said supreme council which may now or hereafter govern the order. Said William Ryan shall have the right during his membership in the order to surrender this certificate and receive a new one, and *may substitute another beneficiary or beneficiaries therein, if he so desires, by complying with the laws of the order upon this subject.*"

The petition alleges the execution and delivery of the benefit certificate to William Ryan, the death of Mary Ryan in January, 1894, the substitution of plaintiff as beneficiary in the certificate on the eighth day of February, 1894, the death of William Ryan in March following, that at the time of his death he was a member in good standing in the order, and that the defendant had refused upon due proof of his death to pay plaintiff the amount due under the certificate.

The defenses were that the plaintiff had not been lawfully substituted as beneficiary, and that, at the time of his death, William Ryan stood suspended for nonpayment of dues and assessments, thereby having forfeited all rights to membership or benefits in the order.

The cause was submitted to the court sitting as a jury, which resulted in a judgment for defendant. No instructions were asked or given. On this appeal the plaintiff claims that, under the undisputed facts, the judgment should have been for him.

The defendant admits that it issued the benefit certificate, that Mary Ryan died in January, 1894, and that William Ryan died about two months thereafter. The plaintiff's right to sue is based on the following written request, which was signed by William Ryan and directed to the secretary of the defendant, to wit:

"St. Louis, February 8, 1894.
"*To the Supreme Secretary, Catholic Knights of America.*

"DEAR SIR:—I hereby request that my benefit certificate in your order be changed from my wife, Mary Ryan, who is dead, to John J. Head, pastor of the Annunciation church, St. Louis, Mo. I am a member

in good standing of branch 92, Catholic Knights of America.          "WILLIAM $\overset{\text{his}}{\text{X}}$ RYAN.
mark.

"Witness:   James J. Brady; Wm. Lawson."

The sufficiency of this writing to substitute the plaintiff as a beneficiary must be determined by the terms of the certificate and of the charter and by-laws of the defendant governing or regulating the change of beneficiaries. These make up the contract between the defendant and the deceased; and, if they provide for a substitution of beneficiaries in a certain way, then all other methods are excluded, and unless the mode adopted by plaintiff and the deceased to effect this was in substantial compliance with the mode prescribed, the judgment must be affirmed. *Coleman v. Knights of Honor*, 18 Mo. App. 194; *Stewart v. Supreme Council, American Legion of Honor*, 36 Mo. App. *loc. cit.* 330; Niblack on Benefit Societies, sec. 218; Bacon on Benevolent Societies, sec. 161.

The following section of the by-laws points out distinctly and clearly how a change of beneficiaries may be made.

"Sec. 162. Every member, at his initiation into the order, shall have a benefit certificate issued to him. Each member may enter upon his application the name or names of the members of his family, or those to whom he desires the benefit paid, and they shall be entered in the benefit certificate according to said direction. A member may at any time, when in good standing, change his beneficiary upon complying with the requirements hereinafter provided, and upon surrender of his benefit certificate and payment of a fee of fifty cents. Brothers desiring a change of beneficiary shall make application to the branch for its consent to the change, which application shall be in writing, and read

at a regular meeting of the branch, and deferred for branch action to the next regular meeting, when, if three fourths of those present approve of the change as requested, the change shall be made by the supreme secretary upon the receipt of the benefit certificate and a fee of fifty cents, accompanied by a certified copy of the branch action on said application; provided that, by the unanimous consent of the meeting at which the application for a change is first read, action may be had at said meeting."

Should the beneficiary die and the assured fail to designate another, section 163 of the by-laws provides the disposition to be made of the fund. The section is as follows:

"In the event of the death of one or more of the beneficiaries selected by the member before the decease of such member, if he shall make no further disposition thereof, upon his death such benefit shall be paid in full to the surviving beneficiary or beneficiaries, each sharing *pro rata*, as provided in the benefit certificate. In the event of the death of all beneficiaries selected by the member before the decease of such member, if he shall make no other or further disposition thereof, the benefit shall be paid to the heirs of the deceased member, and, if no person or persons shall be entitled to receive such benefit by the laws of this order, it shall revert to the Sinking Fund of the Catholic Knights of America."

Section 2 of the charter reads:

"The object of the corporation shall be to unite fraternally all acceptable Catholics of every profession, business, and occupation; to give all possible moral and material aid in its power to members of the organization by holding instructive and scientific lectures, by encouraging each other in business, and by assisting each other to obtain employment; to establish and

maintain a benefit fund, from which a sum not to exceed $2,000 shall be paid at the death of each member to his family, *or be disposed of as he may direct,* but the death benefits shall be limited to the assessment *per capita* until such assessment reaches $2,000 or more; to establish a fund for the relief of sick and distressed members, and to establish and maintain a circulating library of useful and instructive books for the use of the members of the association."

Section 6 of the constitution is as follows:

"To establish a benefit fund from which, on satisfactory evidence of the death of a beneficiary member of the order, a sum not exceeding $2,000 shall be paid *as he may have directed in his benefit certificate;* but the death benefit shall be limited to the assessment *per capita* until such assessment shall reach $2,000, or more."

It is obvious that the method adopted by plaintiff and Ryan to effect a change of beneficiaries was in no respect a compliance with section 162, *supra,* of the by-laws. No application was made to the branch lodge, and no notice was given to it or to defendant of the desired change. Counsel for plaintiff concedes this, but contends that section 162 applies only where a change is sought during the life of the beneficiary named in the certificate, and that, where the beneficiary dies, the assured is in the same position as when he first applied for membership, and can, without formality or restriction, designate any other beneficiary. We do not think that the contract, when all of its parts are considered, will admit of such a construction. Section 162 furnishes an exclusive and universal method for a change of beneficiaries. Section 163, *supra,* provides no other, its only purpose being to prevent a lapse of the policy under certain contingencies. Provision is made in the section for the designation of a new bene-

ficiary under the circumstances stated, but the necessary implication is that such designation or change must be made as provided by the by-laws of the order governing that subject. Neither does the plaintiff's argument find any support in the charter. It is true that the act under which the defendant is incorporated provides that the insurance may be disposed of *as the member may direct*, but this by no means prevented the governing body of the order from making reasonable regulations governing such disposition. This the board of directors did by enacting section 162, *supra.* That the restrictions there imposed are unreasonable is not asserted. *Coleman v. Knights of Honor, supra.*

What we have said renders a discussion of the question of Ryan's suspension not only unnecessary, but impolitic. The necessary parties for the determination of that matter are not before the court.

With the concurrence of the other judges the judgment of the circuit court will be affirmed. It is so ordered. All concur.