ST. LOUIS POLICE RELIEF ASSOCIATION, Plaintiff, v. TIERNEY et al., Appellants; STRODE Admr., etc., et al., Respondents.

St. Louis Court of Appeals, January 30, 1906.

1. **MUTUAL BENEFIT SOCIETIES:** Ultra Vires: It is a general rule that when the corporate charter of a mutual benefit society provides the manner of exercising its corporate powers, those corporate powers must be exercised in the manner provided; but this rule is subject to limitations and exceptions.

2. ——: ——: **Directory Provisions:** Where the charter provisions of such a corporation are merely directory and not conditions precedent to the exercise of its powers, acts performed by the corporation within the scope of its general powers, but not in accordance with the forms prescribed, are not void.

3. ——: ——: ——: **Waiver:** Such directory provisions, when provided primarily for the benefit of the society, may be waived by the association.

4. ——: **Directory Provisions: Designating Beneficiary:** Where the charter of a mutual benefit society provided a certain time and manner of designating the beneficiary of an insured and where such formality did not go to the substance of the contract of membership nor affect the express object of the association it was a directory provision merely and strict compliance with it was not necessary to make a valid designation.

5. ——: ——: ——: **Waiver:** Where such directory provisions with relation to designating a beneficiary were never lived up to by the association, nor required of members, a strict compliance with them on the part of a member was waived.

6. ——: ——: ——: **Heirs at Law: Changing Beneficiary.** Where the constitution of a mutual benefit society provided that if a member should fail to designate his beneficiary on the books of the association, the death fund should be paid to his heirs at law, a failure to desinate a beneficiary, according to the method provided in the constitution, when such method was merely directory and not enforced by the association, did not *ipso facto* operate as a designation of the heirs at law, within the meaning of the constitution, so as to require a compliance with the provisions of the constitution relating to a *change* of beneficiary, in order to divest them of any right so acquired.

7. ——: **Designating Beneficiary: Former Designation:** Where a member of a mutual benefit society designated his wife as his beneficiary, then severed his connection with the society and afterwards became a member a second time, the former designation had no force or effect unless both the beneficiary and the society adopted it as the proper designation under the second contract of membership.

8. ——: ——: **Waiver of Directory Provisions:** Where a member of a benefit society designated his wife as his beneficiary and afterwards forfeited his membership and then subsequently became a member again without again designating a beneficiary in the manner provided by the constitution,

and it appeared that the manner of designating beneficiaries as provided in the constitution was not enforced by the association, and the member in his last illness expressed a desire to designate his wife as beneficiary, sent a message to the secretary of the association requesting the privilege of doing so and was told by the secretary that the former designation was sufficient, under the rule that equity will treat that as having been done which ought to have been done, the wife will be held as the beneficiary designated and entitled to the fund paid on account of the benefit certificate instead of the heirs at law.

Appeal from St. Louis City Circuit Court.—*Hon. Horatio D. Wood,* Judge.

AFFIRMED.

*R. M. Nichols* for appellants.

The constitutional provisions, forming the contract with the members as to the designation of beneficiary, and the change thereof, cannot be waived by the corporation, nor by its officers. Nibolack on Ben. Assns., sec. 215, p. 413; Head v. Providence Ins. Co., 6 U. S. 127, 2 Cranch, 127; Leonard v. Am. Ins. Co., 97 Ind. 299; Smith v. Smith, 62 Ill. 494; Couch v. Fire Ins. Co., 38 Conn. 181; Plahto v. Ins. Co., 38 Mo. 255; Ruggles v. Collier, 43 Mo. 375; Mathews v. Skinker, 62 Mo. 332; Ellerbe v. Faust, 119 Mo. 653; Assn. Fund v. Allen, 106 Ind. 593; 7 N. E. 317; Stephenson v. Stephenson, 64 Iowa 534; Holland v. Taylor, 111 Ind. 121, 12 N. E. 116; Sup. Council v. Smith, 45 N. J. 466, 17 Atl. 770. The constitutional manner prescribed for the exercise of the power of appointment requires the designation to be in writing, and signed by the member, and "attested by the secretary under the seal of the association," "upon the death benefit record." No court has ever held that this prescribed method can be departed from in substance, or that a mere oral understanding by a person acting as an officer, as to a different method, would suffice. Ross v. Ross, 89 Mo. App. 621; Hall v. Association,

47 Minn. 85; M. B. Assn. v. Brown, 33 Fed. R. 11; Vandt v. Ia. Legion, 72 Ia. 682; Ireland v. Ireland, 42 Hun 212; Supreme Lodge v. Nairn, 60 Mich. 44; Vollman's App., 92 P. St. 50; Mellows v. Mellows, 61 N. H. 137; Hallenberg v. I. O. B. B., 94 N. Y. 580; McCarthy v. Supreme Lodge, 158 Mass. 314, 26 N. E. 866; Omstead v. Masonic M. B., 37 Kans. 93, 14 Pac. 449; Daniels v. Pratt, 143 Mass. 216; Rollins v. McHatton,— Cal. 203, 27 Pac. 258; Mason. Assn. v. Jones, 154 Pa. St. 107, 26 Atl. 255; McCurdy v. N. E. Order, 158 Mass. 314, 26 N. E. 866; Thomas v. Thomas, 131 N. Y. 205, 30 N. E. 61; Fink v. Fink, 111 N. Y. 616, 64 N. E. 506; Basey v. Adams, 81 Ky. 357; Smith v. Smith, 62 Ill. 494. Section 5 of the constitution, and section 3 of article 5 of the by-laws provide that this change of beneficiary from the constitutional designation shall be done in writing by the member, and such designation "shall be attested by the secretary under the seal of the association." The adoption of this method of designating a beneficiary is exclusive of all others. Coleman v. Knights of Honor, 18 Mo. App. 189; Head v. Catholic Knights, 64 Mo. App. 213; Hofman v. Grand Lodge B. L. F., 73 Mo. App. 47; Grand Lodge, etc. v. Ross, 89 Mo. App. 621. A member of the society has no interest in the fund, but has simply a power of appointment, and the instrument prescribing a method by which the power is to be executed must be strictly followed. Keener v. Grand Lodge, 38 Mo. App. 543; Masonic Benefit Assn. v. Bunch, 109 Mo. 560; 1 Bacon on Benefit Societies, sec. 237, p. 430; 1 Sugden on Powers, p. 299.

*Thomas L. Anderson* for respondents.

STATEMENT.—The suit is in equity by bill of interpleader. Plaintiff is a beneficiary society organized under the provisions of article ten of chapter twenty-one of the Revised Statutes of Missouri of 1879, and an act of the General Assembly entitled "An act authorizing the

formation of a Police Relief Association in any city having over one hundred thousand inhabitants. Approved March 18, 1881." The objects of the plaintiff association are stated in section one of its charter to be: "To create a fund for: First, the purposes of affording relief to such members of the association as may become (a) sick, (b) disabled, (c) incapacitated by long years of service. Second, to aid the families of police officers who may die while members of the association." Members of the police force of the city of St. Louis are eligible to membership in the association by complying with certain requirements, and upon the death of a member in good standing, the association thereupon becomes obligated to pay to the beneficiary properly designated by said member, the sum of two thousand dollars, and if the member shall have failed to make the designation of a beneficiary, the said sum is to be paid to his heirs at law, in accordance with the law of descents and distribution, and if he has failed to designate and has no heirs at law, the fund then reverts to the association. Michael Tierney, a police officer, departed this life while holding a membership in plaintiff association entitling his proper beneficiary to two thousand dollars. It is alleged on one hand by one set of interpleaders that he had properly designated his wife, Margaret Tierney, as his beneficiary and that she was therefore entitled to the fund of two thousand dollars, and she having since died, her estate is entitled thereto. On the other hand, it is alleged by another set of interpleaders that Michael Tierney made no designation of his said wife as beneficiary of said fund and therefore the same rightfully belongs to them as heirs at law of the assured. In order to relieve itself from being harrassed by these rival claimants, plaintiff association filed its bill of interpleader in the court of equity, setting up the facts, acknowledging liability to the extent of two thousand dollars to the proper parties, whoever they might be, and paid the amount into court, less a small allowance to it for attorneys' fees, and prayed the court for

an order of interpleader on the said rival claimants whereby the right to said fund might be properly adjudicated, etc., and the plaintiff discharged from further responsibility concerning the same. The interpleas were duly filed presenting the several claims. The pleadings and a more extended statement of the facts may be found in the same case, 103 Mo. App. 694, where this case is reported on a former appeal.

Upon the trial, the following facts were developed in evidence. Michael Tierney, several years ago, became a member of the police force of the city of St. Louis, and on August 4, 1890, also became a member of the St. Louis Police Relief Association which at that time, and prior to its readjustment, provided a death benefit of one thousand dollars instead of two thousand dollars, as at present. On August 19, 1892, he properly designated his wife, Margaret Tierney, on the books of the association as his beneficiary. On June 30, 1897, Michael Tierney resigned from the police force in order to embark in business, whereupon, by virtue of the constitution of the association, he, having severed his connection with the police force, *ipso facto* severed his connection with the relief association. Having thus severed his relations with the plaintiff association, he followed another calling for two years and more and on August 21, 1899, became a member of the St. Louis police force a second time, and on the 25th day of the same month, on his new application, etc., became a member of the plaintiff association a second time and by his act of thus becoming a member of the plaintiff association a second time, the association became obligated to pay upon his death while in good standing, to such otherwise proper beneficiary as might be designated by him upon "the death benefit record" of the association, two thousand dollars. It seems that although the relief association had not been reorganized, the plan of relief had been so readjusted during the interim between Tierney's first and second affiliation therewith that it paid a benefit of two thousand dollars under the

new, instead of one thousand dollars under the old arrangement. It appears that this association issued no certificate of membership in the nature of a policy or otherwise to its members and that therefore Tierney had no certificate evidencing the contract or any part thereof between himself and the association. Section five of article one of the constitution of the association provided for the designation and change of beneficiary and is as follows:

"Designation of Beneficiary. When an applicant is admitted to membership, he shall call at the office of the association between the hours of 9 and 11 a. m. on the third day after he has been admitted to membership, and designate on the death benefit record the disposition of his death benefit. Provided that a member may change his beneficiary by notifying the secretary in writing of his desire to do so, and designating the change desired."

Section four of article seven of the constitution provided when and to whom the death benefit should be paid and is as follows:

"Death. Whenever any member of the police force, who is a member of this association shall die, the sum of $2,000 shall be paid within thirty days after his demise, to such person or persons as he may have designated on the books of the Association. If he shall have failed to designate, it will be paid to his heirs-at-law in accordance with the law of descent and distribution. If he shall have failed to designate, and has no heirs at law, it shall then revert to the association."

Section one of article two of the constitution provides as follows:

"The rights, powers and responsibilities of this association shall be vested in, enjoyed, exercised and borne by an executive committee."

Section three of article five of the constitution constitutes the secretary the active business officer of the association and is as follows:

"Secretary. The secretary shall (1) before performing an official act, enter into bond in the sum of five

thousand dollars, for the faithful performance of his official duties, the expense of which bond shall be borne by the association; (2) attend all meetings of the executive committee and record the proceedings thereof as approved; (3) conduct the correspondence of the association; (4) preserve the seal of the association, and prevent the improper use thereof; (5) collect all moneys due the association and pay the same over to the treasurer on or before the first Monday after each pay-day in the presence of at least two trustees; (6) keep a cash book showing (a) all moneys received, and from what source, (b) all moneys disbursed and on what account; (7) keep an individual ledger account with each member of the Association, and such other books as may be required; (8) exhibit his books, papers and accounts to any member of the executive committee whenever requested to do so; (9) report quarterly to the executive committee a detailed statement of the transactions of his office for the current quarter; (10) perform such other duties as may be from time to time prescribed by the executive committee; (11) transmit to his successor in office, as soon as qualified, all property of the association appertaining to his office; and (12) it shall be the duty of the secretary to be at his office from 9 to 11 a. m. on the third day after an applicant has been admitted to membership, so as to allow him to designate the disposition of his death benefit; it shall be attested by the Secretary under the seal of this association."

Section one of article nine of the constitution provides as follows:

"No record of the association shall be taken from the office and left at any police station, or other place, except it be in the custody of the secretary."

The institution seems to have provided no by-laws as such. The above constitutional provisions are all that are pertinent to the case at bar. While Tierney became a member of the association on his second application, August 25, 1899, it appears that he did not call at the office

of the secretary between the hours of 9 and 11 a. m. on the third day thereafter and designate a beneficiary on the "death benefit record." No special reason is given why he failed to do so. It was shown, however, by Mr. Judge, the secretary of the association, that the requirements of this rule were not enforced by the association and that it was seldom complied with; that the association, in fact, encouraged the officers not to comply therewith, inasmuch as it was arranged whereby the captains of the several police districts were notified that on certain days the secretary would be at the police station of a certain district with the book, and the officers of the district were notified by the captain to call at the station and sign the book or make the designation required. The Secretary testified as follows:

"I took the book around to the different stations. . . . Several of the police officers dropped in. I was located at the ninth police district station at Dayton and Jefferson avenue and a great many officers dropped in there and signed that book at the police station. There was a police court upstairs and they very frequently had business there and at their convenience they would drop in and sign the book.

"Q. What about signing it the third day after admission to the Police Relief Association? Is that the general custom to do that? A. No, sir, that was never lived up to in my time."

It will be observed also that the constitution, by section one of article nine, supra, contemplates that the Secretary may convey the records of the association to the police stations and other places for the convenience of members of the association, for at no place in the constitution is such prohibited nor is there any particular place found designated therein where the records shall be lodged and said section only prohibits the records being "left at any police station or other place except it be in the custody of the secretary."

Michael Tierney sickened and died May 19, 1901.

He was bedfast for six or eight weeks prior to his death. Officer Stone who was a member of the executive committee of the association, testified that as such member of the executive committee, he called upon Tierney two or three times while he was sick to pay sick benefits to and collect dues from him; that during one of these visits, Tierney told him that he had designated his wife as his beneficiary during his prior membership in the association and thereupon Stone said he told Tierney it would be necessary for him to redesignate, as the old association only allowed one thousand dollars and the new, as it was readjusted, allowed two thousand dollars; that Tierney then requested him to bring the death benefit record or have Mr. Judge, the secretary, bring the same to his house so that he could designate his wife, Margaret Tierney, thereon as his beneficiary; that he, Stone, forthwith called upon Mr. Judge, the secretary, in his office and conveyed the message and requested Mr. Judge to call upon Tierney with the book as he desired to designate his wife; that Mr. Judge looked over the old book and found that Tierney had properly designated his wife thereon and informed Stone that it was unnecessary for him to do so a second time; that Tierney had designated his wife on the old book when a member before and that no other or further designation was required or necessary. Stone thereupon called upon Tierney and informed him of what the secretary had said, that the prior designation was all that was required, and Tierney seemed to be satisfied. There is other testimony to the effect that officer Dooley, at the instance of Tierney, called upon the secretary on the same mission and was instructed by the secretary to the same effect as Stone. It is true that Dooley denies that he made this call at the instance of Tierney and says he did it at Mrs. Tierney's request, but he seems to be an unfriendly witness to the affirmative of this issue, however, and another witness testified that he was in the room and heard Tierney himself instruct witness Dooley

to call on the secretary and request him to bring the
book down so that he might designate his wife. In view
of the finding of the trial court on the facts, this court
will accept the version that Tierney made the request
on Dooley. This is immaterial, however, as Stone's tes-
timony is positive that he called on the secretary at
Tierney's request and notified Tierney of the secretary's
answer. Mr. Judge, the secretary, testified that both
officer Stone and officer Dooley, the latter of whom re-
sided in the house with Tierney, spoke to him about the
matter. He said: "I looked the matter up and I found
from the old book that he had designated his wife, Mar-
garet Tierney, . . . as beneficiary, and I asked Mr.
Stone and also Mr. Dooley who spoke to me several times
about it and who was the direct representative, I under-
stand, of Mr. Tierney and was living in the house with
him. I looked the old book up and found that he had
designated his wife, and having done that before, I did
not think it was necessary to take the book down to him
again or to take what we know as the new book down to
him as he had designated his wife in the old book. I
made that statement to Mr. Stone and I made it on more
than one occasion to Mr. Dooley. Mr. Dooley came to
see me on two or three occasions about the same matter."
It appears that from these repeated assurances of the
secretary that his wife was properly designated as bene-
ficiary, all of which were conveyed to Tierney while he
was sick in bed, Mr. Tierney was satisfied and died in
peace and so believing, so far as that matter was con-
cerned. It was further shown in evidence that Mrs.
Tierney was a good, kind and loving wife and devoted
herself to the care and attention of her husband in his
last illness. His last will was read in evidence, show-
ing that he had willed and bequeathed all of his prop-
erty, both real and personal, to her. This was presum-
ably read for the purpose of evidencing his kindly inten-
tions toward his wife, as it could have no effect on the
disposition of the fund in controversy. It was fur-

ther shown that Mr. Tierney left surviving him no child; that his heirs at law, who would take under the constitution of the Association in the event of his failure to designate a beneficiary, are William Tierney and Ellen Tierney, brother and sister, of St. Louis, Missouri, Mary Rust, a sister in Manchester, New Hampshire, Mark Tierney, his father, and Patrick Tierney, his brother, of County Galloway, Ireland, and his mother, Mary Tierney, who is since deceased and upon whose estate William Tierney of St. Louis duly qualified as administrator. It further appears that Margaret Tierney, the widow of Michael Tierney, has since the demise of her husband, departed this life and that Garrard Strode, Public Administrator for the City of St. Louis, is in charge of her estate as administrator *pendente lite;* that prior to her death she made a will and William Hannon became administrator thereof *cum testamento annexo,* but his authority was suspended by reason of the contest of her will and said Strode was placed in charge *pendente lite;* that by her last will, her brother and sister, William Hannon and Annie Hannon were made the sole devisees and legatees. It therefore appears that the controversy is between the heirs at law of Michael Tierney on the one hand, known as the Tierney interpleaders, and the devisees or beneficiaries under the will of his wife, Margaret Tierney, known as the Hannon interpleaders.

The question for decision is whether Michael Tierney either designated his wife as beneficiary or whether he made such effort so to do and did all that he could to have her so designated so that a court of equity, in deference to his manifest intention, will treat that as done which ought to have been done and decree her to have been so designated. The learned judge found the issues for the Hannon interpleaders to the effect that Tierney had done all that was possible for him to do under the circumstances toward designating his wife as beneficiary and that both Mr. Tierney and plaintiff as-

sociation adopted and ratified the prior designation and accepted her as a properly designated beneficiary. From this finding and judgment, the Tierney interpleaders appeal.

NORTONI, J., (after stating the facts).—1 It is argued by learned counsel for appellants that inasmuch as there is neither a certificate of membership in the nature of a policy, nor by-laws evidencing a contract of insurance in the case at bar, that the entire contract between the parties is contained in the constitution of the association; that the sections of the constitution above quoted are controlling and that the adjudication of the issues here involved must be had in strict accordance with the letter of said constitutional provisions because they are charter provisions and such charter provisions are not subjects of waiver by the association. It is insisted that the contract can only be effected in the manner pointed out in the constitution; that in event the assured failed to appear on the third day between the hours of 9 and 11 a. m. and designate a beneficiary in the manner prescribed, then by virtue of the contract between the parties, the provisions of the constitution contained in section 4 of article 7 to the effect that "If he shall have failed to designate, it will be paid to his heirs at law," etc., took effect at once and nominated, designated and therefore constituted the heirs at law the beneficiaries under said contract, whose rights, as designated beneficiaries, attached immediately by virtue of the constitutional provisions mentioned, subject only to be divested in the manner pointed out for changing the beneficiary, which was by written notice to that effect. The argument, as will be observed, is predicated upon the principle that the provisions of a corporate charter are as conditions precedent which must be strictly followed and complied with in carrying out the object and purposes of the corporation; that no deviation therefrom will be allowed or tolerated and therefore, as a corpora-

tion cannot deviate from its charter provisions and enter into contracts in a manner different from that prescribed therein, it is likewise not competent for it to waive the requirements of any of such provisions.

Indeed, it is generally true upon the principle that inasmuch as the act of incorporation is to them an enabling act giving to the corporation all of the powers of which it is possessed thus conferring its ability to contract and that the constitution or charter is the source through which such powers flow from the fountain head and within which is supposed to lie the proper limitations on the exercise of such powers, that therefore, when the mode and manner of contracting is prescribed in the charter, the power thus conferred must be exercised in the mode and manner pointed out in the charter and as a necessary result therefrom, such provisions which are material and of the essence of the corporate existence, are not subjects of waiver by the company or its officers. The doctrine is especially applicable in requiring corporations to remain within their charter limits in contracting and contracts entered into outside of its charter provisions are frequently declared *ultra vires* in a proper case. [Head v. Prov. Ins. Co., 6 U. S. 127; Presby. Mut. Assurance Fund v. Allen, 106 Ind. 593; Matthews v. Skinker, 62 Mo. 329; Leonard v. Amer. Ins. Co., 97 Ind. 299; Couch v. City Fire Ins. Co., 38 Conn. 181; Plähto v. Mer. & Mfg. Ins. Co., 38 Mo. 248; Ruggles v. Collier, 43 Mo. 353-376; Holland (Guardian) v. Taylor et al., 111 Ind. 121; Sup. Council, etc., v. Smith, 45 N. J. 466; 17 Atl. 770; Blair v. Perpetual Ins. Co., 10 Mo. 565; Bank of Louisville v. Young, 37 Mo. 406; Dairy Co. v. Mooney, 41 Mo. App. 671; Hosack v. College of Physicians, 5 Wend. (N. Y.) 547; Beatty v. Marine Ins. Co., 2 Johns. (N. Y.) 109; Fridley v. Bowen, 87 Ill. 151; Niblack on Benefit Societies (2 Ed.), sec. 215; 7 Amer. & Eng. Ency. Law (2 Ed.), 695.]

In accordance with this doctrine, it was held by the Supreme Court of Connecticut in Couch v. City Fire

Ins. Co., 38 Conn. 181, where the charter of the insurance company provided that "If there shall be any other insurance upon the whole or any part of the property insured by said company, during the whole or any part of the time specified in such policy, then every such policy shall be void, unless such double insurance shall exist by consent of said company, indorsed upon the policy under the hand of the secretary," that the insurance company could not waive performance of the act required by such provisions and its charter in the mode prescribed and that its consent to the double insurance can only be proved by the indorsement thereof on the policy under the hand of the secretary. To the same effect is Leonard v. Amer. Ins. Co., 97 Ind. 299. And in Presby. Mut. Assurance Fund v. Allen, 106 Ind. 593, where the charter of a mutual benefit society provided that: "Upon the decease of any member of this association, the fund to which his family is entitled, shall be paid as may be designated in the application for membership; this being changed by death or otherwise impossible, it shall go: 1st. To the widow and infant children. 2nd. To his mother and sister. 3rd. To his father and brothers. 4th. To his grandchildren. 5th. To his legal heirs;" it was held: "The provisions of the charter, as we read them, do prohibit a change of beneficiaries by the act of the insured and insurer, for they declare that the benefit 'shall be paid as may be designated in the application,' and that 'this being changed by death or otherwise impossible, it shall go' in the mode which is specifically provided. We can see no way to avoid the conclusion that this charter provision requires the benefit to be paid to the person named in the application, or to those specified in case of the death of those persons or of some occurrence making it impossible to pay them." It will be observed that the contracts in the two cases mentioned were made in violation of the essence and substantial provisions of the charters of the companies and were therefore held to be in conflict with

the provisions of the corporate existence and beyond the power of the parties to engage. The well-established doctrine above referred to and upon which the adjudication in the cases quoted is predicated, like all other rules of the law, is subject to its limitations and necessary exceptions.

2. The rule requiring strict compliance with the charter provisions does not apply with all its force to acts provided for in the charter when the provisions are directory merely, rather then mandatory, and in cases where the corporation has acted in a matter not in strict conformity to the charter provisions, which are merely directory, the courts have universally recognized this distinction and even though they were consummated by deviations from the charter, held such acts valid in respect to contracts *intra vires* or within the scope of their authority on the ground that such provisions were inserted in the charter not as conditions precedent on them, but are mere directions for the benefit of the corporation and therefore the proper officers representative of the corporate will can waive the same, inasmuch as they are merely directory and not precedent conditions. The fundamental distinction between that which is of the essence of the thing itself and merely directory provisions was recognized at an early date by Lord Mansfield in Rex v. Locksdale, 1 Burr. 447, in the following language: "There is a known distinction between circumstances which are of the essence of a thing required to be done by an act of parliament and clauses merely directory." And so, too, this distinction was recognized and carried into the law pertaining to corporate charters at an early period in the jurisprudence of this country by the Supreme Court of the United States in an opinion delivered by Mr. Justice Story in his usual clear and able manner in the case of Bank of the United States v. Dandridge, 12 Wheat. 64, 25 U. S. 64, in which case Chief Justice Marshall dissented, adhering to the less pliable doctrine announced by the same court in an opinion

prepared by him in the case of Head v. Prov. Ins. Co., supra. About the same time, the Supreme Court of Pennsylvania recognized and pointed out the distinction in Bank of Northern Liberties v. Cresson, 12 Serg. & Rawl. (Pa.) 306 and quoted and approved Lord Mansfield in Rex v. Locksdale, supra. Until now the following quotation from the opinion of Mr. Justice Story in the case mentioned supra, is recognized as a most clear and terse statement of the law on the subject: "That some of the provisions of the charter and by-laws may well be deemed directory to the officers and not conditions without which their acts would be utterly void, will scarcely be disputed. What are to be deemed such provisions must depend upon the sound construction of the nature and object of each regulation and of public convenience, and apparent legislative intention." This doctrine is recognized by the standard authors on the subject and the courts of the country generally. [See 4 Thompson on Priv. Corp., sec. 5674; 5 Thompson on Priv. Corp., 5978; 7 Amer. & Eng. Ency. Law (2 Ed.), 701-714-767; Southern Life Ins. Co. v. Lanier, 5 Fla. 110; Sherman Center Town Co. v. Morris, 43 Kas. 282; Bulkley v. Derby Fishing Co., 2 Conn. 252; Tates v. Bank of State of Ala., 2 Ala. 451; Middle Bridge Props. v. Brooks, 13 Me. 391.]

The result of the adjudications on the subject is thus aptly stated in the text (7 Amer. & Eng. Enc. Law, (2 Ed.) 714 to be: "Not every provision in a charter or act of incorporation is to be regarded as mandatory. Some are merely directory. Whether they are the one or the other, must depend upon the nature and object of each provision and apparent legislative intention. Provisions merely directory to the officers of the corporation do not affect the powers of the corporation." From the considerations above mentioned and from the further consideration that those provisions of the charter which are merely directory to the officers of the association for their guidance in the safe and convenient con-

duct of its business fulfill no more important office than the by-laws of the society which are provided primarily for the benefit of the association and do not necessarily affect the corporate powers in *intra vires* contracts, it is competent for the society to waive a strict compliance with such merely directory provisions of its charter. This proceeds, of course, upon the principle that such merely directory provisions are in no sense conditions precedent upon the association, but rather fulfill the office of regulations addressed to the officers and members, and are therefore not of the essence of the corporate business, and as such, affecting the power of the corporation itself but rather the mode, manner and details of its exercise, and therefore a strict compliance therewith may be waived by the association. [Kimball v. Lester, 43 N. Y. App. Div. 27; Kepler v. Sup. Lodge, 52 Hun. (N. Y.) 274; Bulkley v. Derby Fishing Co., 2 Conn. 252; St. Louis, etc., Ry. Co. v. Terre Haute, etc., Ry. Co., 145 U. S. 393; Bank of Northern Liberties v. Cresson, 12 Serg. & Rawle (Pa.) 306; Southern Life & Trust Co. v. Lanier, 5 Fla. 110; Bates et al. v. Bank of Alabama, 2 Ala. 451; Middle Bridge Props. v. Brooks, 13 Me. 391; Bank of U. S. v. Dandridge, 25 U. S. 64, 12 Wheat. 64; Sherman Center Town Co. v. Morris, 43 Kas. 282; St. Louis Police Relief Assn. v. Strode, 103 Mo. App. 694, 77 S. W. 1091; Courtney v. St. Louis Police Relief Assn., 101 Mo. App. 261; 73 S. W. 878; 7 Amer. & Eng. Ency. Law (2 Ed.), 701-714-767; 23 Amer. & Eng. Ency. Law (2 Ed.), 783; 1 Bacon on Benefit Societies (3 Ed.), 239.]

That it is competent for mutual benefit societies to waive a strict compliance with their by-laws, is well settled. [Grand Lodge v. O'Malley, 114 Mo. App. 191, 89 S. W. 68; Grand Lodge v. Reneau, 75 Mo. App. 402; Allison v. Stevenson, 51 N. Y. App. Div. 626; Kimball v. Lester, 43 N. Y. App. Div. 27; Kepler v. Sup. Lodge, 52 Hun. (N. Y.) 274; Courtney v. St. Louis Police Relief Assn., 101 Mo. App. 261, 73 S. W. 878; 3 Amer. & Eng.

Ency. Law (2 Ed.), 961; 1 Bacon on Benefit Societies, (3 Ed.) 239-309.]

With these principles before us, it becomes our duty to examine the several constitutional provisions involved with a view of ascertaining whether those pertinent here be mandatory or merely directory. Section 1 of article 2 provides that the rights, powers and responsibilities of the association shall be vested in, enjoyed, exercised and borne by an executive committee. It is palpable from those provisions that the executive committee was not expected to exercise the powers in detail personally, for section 3 of article 5 above quoted places the principal portion of the active business of the association upon the Secretary, constitutes him the keeper of the records and seal and makes him the agent thereof for the purpose of consummating the details of the insurance contracts and otherwise conducting the business of the institution, and as such agent, he is required to report quarterly to the executive committee. Section 5 of article 1 provides that when the applicant has been admitted to membership, he shall call at the office of the Secretary between the hours of 9 and 11 a. m. on the third day thereafter and designate on the death benefit record the disposition of his death benefit. And it is provided in section 3 of article 5 that the secretary shall be at his office from 9 to 11 a. m. on such third day to allow such designation to be made and that the same shall be attested by him under his hand and seal. The provisions requiring the applicant and the secretary to be at the office on the third day were certainly incorporated as directory regulations for the purpose of enabling the assured to know on what day he can, if he desires, have his designation attended to and for the convenience of both himself and the association. Prior to the admission to membership, there was an application to be made and a medical examination to be had, after which the act of admission, and therefore three days time no doubt was pro-

116 App—30

vided in order to more effectually enable the secretary
to notify the applicant of the favorable action on his
application and to enable the applicant, a police officer
always, no doubt to procure the necessary leave and
meet the secretary at the office for the purpose men-
tioned. From these considerations we cannot believe
that they constituted precedent conditions in such a
sense that a strict compliance therewith must be had and
that. in event the assured failed to make the designation
on that day, he was precluded from making the. same
thereafter. On the contrary, we understand that it was
competent for him to make such designation on that day
or on any other day thereafter that the assured saw fit.
Indeed, it might be that the member had no one in mind
whom he desired to designate on the third day or for
some sufficient reason was unable to attend for that pur-
pose. This certainly would not preclude him from mak-
ing proper designation at a later day. Nor would such
failure on his part constitute the heirs at law the desig-
nated beneficiaries within the meaning of the constitu-
tion so that it would become necessary for the assured
to proceed under the formalities prescribed for change
of beneficiary in order to make a designation. We reach
these conclusions from two sufficient reasons. One is,
the provision of the constitution as to a designation on
the third day, was merely directory, as appears by the
reading of the several provisions, inasmuch as it
amounted to a formality which neither went to the sub-
stance of the contract of membership nor affected the
express object of the association, it being a matter of de-
tail only. And then, too, it is competent in construing
the constitution to view the recognized interpretation
of the same by the officers of the association itself, which
made and adopted the same. The Secretary testified
that this regulation was never lived up to in his time,
and further, that he made a practice of calling at the
several police stations for this purpose and that the of-
ficers were allowed to call at their convenience and make

the designation. The association itself, by solemn constitutional provision contained in section 1 of article 9, recognized this practice of the secretary in carrying the records from place to place for that purpose, in the following language: "No record of the association shall be taken from the office and left at any police station or other place except it be in the custody of the secretary." This language does not forbid the act but clearly admits it to be a practice of the association, and only seeks to enjoin the duty upon the secretary of constantly keeping the record in his care, when it is thus being taken from place to place for the convenience of the members. All of which shows a waiver on the part of the association of a strict compliance with the merely directory provision requiring the beneficiary to be designated on the third day, etc. [St. Louis Police Relief Assn. v. Strode, 103 Mo. App. 694, 77 S. W. 1091; Hanson v. Minneapolis, etc. Relief Assn., 59 Minn. 123; 1 Bacon on Benefit Societies (3 Ed.), sec. 239-308 and cases supra.]

3. A further reason for holding that the heirs at law were not designated beneficiaries in the sense that renders it necessary for the assured to proceed in accordance with the forms prescribed for changing the beneficiary, is that the constitutional provision on the designation of a beneficiary contemplates a positive, affirmative designation by the express act of the assured and in the very nature of things, when the rights of the parties are considered this is eminently proper, for the assured, under a contract of this kind, enjoys but two privileges, first, that of paying dues, and second that of exercising one and only one power in connection with the contract; that is, his power of appointment or designation of the person who is to be the recipient of his bounty, and under such circumstances, every consideration of good conscience and of justice seems to dictate that such designation should only be made by positive and express act on his part, whereby a clear manifestation of his will is had on the subject.

The word "designate" is defined by the Standard Dictionary to mean: "To mention by distinctive name; identify by name." By Webster: "To point out; to name." By 9 Amer. & Eng. Ency. Law (2 Ed.), 405, as: "To designate is to point out or mark by some particular token; to show or point out; to indicate by description or by something known or determinate." From this it appears that to designate a beneficiary within the meaning of the constitution, a positive and affirmative act expressly naming or pointing out of the person was required on the part of the assured. As said by the Supreme Court of Minnesota: "By the 'designation' of a beneficiary, the by-laws evidently refer to some express act of the principal specifying and naming some particular person, and by 'changing' the beneficiary, they refer to the act of naming and specifying some other person or persons in place of those previously designated. Hanson v. Minn. etc. Relief Assn., 59 Minn. 123-128; Shryock v. Shryock, 50 Neb. 886; It is clear to this court that the failure of Tierney to designate a beneficiary on the third day after his admission to membership did not, *ipso facto* operate as a designation of the heirs at law within the meaning of the constitution nor the law with respect to designation. This same conclusion is irresistible from still another standpoint and that is, that the constitution in no manner denominated such failure as a designation of the heirs, but on the contrary it treats of the matter as a failure to designate and provides solely "if he shall fail to designate, it will be paid to his heirs at law" etc. This does not say that upon such failure, the heirs at law are thereby "designated" in lieu of the beneficiary who was not otherwise designated. The provision is merely directory as to what course the fund shall take in event of the failure to designate, and the only standing that the heirs at law can have in this or any other court must be predicated upon a failure to "designate" and not upon the hypothesis that such heirs at law were designated. The result of the authorities

on this branch of the case enforce the following conclusions which are amply supported by both reason and principle.

First. That the provisions of the constitution pertaining to the designation of the beneficiary are merely directory in their nature, inserted for the convenience of the parties, more particularly designed for the protection of the association, the object being that it might have in its records authentic written evidence as to who are designated as beneficiaries to whom benefits shall be paid. It is a formality which neither goes to the substance of the contract of membership nor affects the express object of the association, and therefore it could be waived by the association.

Second. That the act of designation contemplated in the constitution is a positive, affirmative and express act on the part of the assured, amounting to the express naming and pointing out of the beneficiary by him and that his failure to exercise the act in the manner and at the time designated, did not operate as an act of designation of the heirs at law so as to give them vested rights in the fund which could only be divested in the manner provided for changing the beneficiary. Authorities supra.

4. The former designation of Margaret Tierney as beneficiary in the death benefit record of the first or prior membership in the association, of course ceased to be effective as such when the assured severed his contract relations with the institution, and such prior designation could be of no force or effect in this case as such unless it be that the association had waived the formal designation in the manner prescribed and both parties had adopted and ratified that as a proper designation under the present membership contract.

5. From what has been said, it is apparent that Tierney had made no designation at the time of instructing officer Stone to request the secretary to bring the death benefit record to his house in order that he might

properly designate his wife. The matter then still remaining open, how was he to proceed to make such designation?

The law is well settled that in making the designation as well as in changing the beneficiary in contracts of this kind, the insured is bound to do it in the manner pointed out by the policy and the laws of the association unless a strict compliance therewith is waived by the association. [1 Bacon on Benefit Societies, (3 Ed.) secs. 238-239-307; Grand Lodge etc. v. O'Malley, 114 Mo. App. 191, 89 S.W. 68; Supreme Conclave, etc., v. Capella, 41 Fed. 1; McLaughlin v. McLaughlin, 104 Calif. 171; Holland v. Taylor, 111 Ind. 121; Presby. Mut. Assurance Fund v. Allen, 106 Ind. 593; Masonic Ben. Assn. v. Bunch, 109 Mo. 560, 19 S. W. 25; Head v. Sup. Council etc., 64 Mo. App. 212; Coleman v. Sup. Lodge etc., 18 Mo. App. 189; Fink v. Fink, 64 N. E. (N. Y.) 506; Wendt v. Iowa Legion of Honor, 72 Iowa 682; Sup. Council v. Smith, 17 Atl. (N. J.) 770; Natl. Assn. v. Kirgin, 28 Mo. App. 80; Keener v. Grand Lodge, 38 Mo. App. 543; Hall v. Northwestern Endow. Assn., 47 Minn. 85; Eastmen v. Prov. etc. Assn., 62 N. H. 555; Ireland v. Ireland, 42 Hun. (N. Y.) 212; Rollins v. McHatton, 27 Pac. (Colo.) 254; Sup. Lodge v. McNair, 60 Mich. 44; Daniels v. Pratt et al., 143 Mass. 216; Hennenberg v. Dist. No. 1, etc., 94 N. Y. 580; Mellows v. Mellows, 61 N. H. 136; Vallman's appeal—Lang's estate, 92 Pa. St. 50; Masonic Mut. Assn. v. Jones, 154 Pa. St. 107; Thomas v. Thomas, 131 N. Y. 205; McCarthy v. Sup. Lodge N. E. Order, 153 Mass. 314; 26 N. E. 866; Olmstead v. Mut. etc. Assn., 37 Kas. 93.]

6. This is a proceeding in equity, however, where the arbitrary rules of law are not conclusive on the rights of parties. True it is that equity follows the law, but in so doing, it seeks to supply its deficiencies. Where the right would be defeated because of the arbitrary rules of law in a proper case, equity may be enlisted to supply the deficiency to the end that justice shall not

fail and when it is shown that the party in good faith
and good conscience, has sought to comply with the
law and has made every effort on his part to do so, the
court of equity, in aid of the clear manifestation of the
party's will, frequently extends its salutary relief to
the end desired and treats that as done which in good
conscience should have been done and was defeated only
by conduct over which the moving party had no control
and it seems that this doctrine of the equity court is es-
pecially applicable to cases of this character inasmuch
as insurance contracts of this class are testamentary in
their nature, so regarded because the law reserves to the
insured the absolute right to change the destination of
his bounty at any time prior to its taking effect, pre-
cisely as it does in the case of a last will, and because of
the kindly impulses which primarily prompt the insured
to thus provide a benefit for loved ones which is effective
only after the life of the provider has passed and his
lips are closed in death. Therefore a court of conscience
will, as far as possible, when the assured has acted in
good conscience and is without fault, treat his act as an
act testamentary and thus more clearly approximate the
intention of the person whose bounty is involved. [Du-
vall v. Goodson, 79 Ky. 224; Assn. v. Montgomery, 70
Mich. 587; Hall v. Allen, 75 Miss. 175; Pa. Ry. v. Wolf,
203 Pa. St. 269; Grand Lodge v. Child, 70 Mich. 163;
Scott v. Prov. Mut. Relief Assn., 63 N. H. 556; Supreme
Conclave v. Capella, 41 Fed. 1; Hoffman v. Grand Lodge
etc., 73 Mo. App. 47; Grand Lodge v. Ohnstein, 85 Ill.
App. 355; Hanson v. Minn. etc. Relief Assn., 59 Minn.
123; Schryock v. Schryock, 50 Neb. 886; Manning v. A.
O. U. W., 86 Ky. 136; Natl. Amer. Assn. v. Kirgin, 28
Mo. App. 80; 1 Bacon on Benefit Societies, (3 Ed.) sec.
240-310-310a; 3 Amer. & Eng. Ency. Law, (2 Ed.) 961-
962.]

The equitable doctrine announced in the cases last
above cited is clearly evidenced by the rule to be found
in the text (3 Amer. & Eng. Ency. Law (2 Ed.), 961-

962) : "In construing the designation of beneficiaries, courts generally regard the form as secondary to the purpose of promoting the intention of the parties. Accordingly, where it is understood between the secretary of a mutual benefit society, who issues the certificate, and the member who receives it, that the name of a certain beneficiary shall be inserted without further direction, a failure to make such insertion may be corrected by reforming the certificate after the member's death." Therefore it seems quite clear that the learned trial judge decreed correctly in the case at bar in awarding the fund to the representative of the wife, Margaret Tierney, for it is palpable that her husband had an absolute right to designate her as beneficiary at the time he requested the secretary to convey the books to his home for that purpose. It appears that it was the custom of the secretary to carry the books around from place to place to accommodate members in making their designation and this the constitution recognized and levelled its inhibition not against the practice itself, but against so much of such practice only as might involve leaving the record at police stations or "other places" unattended by the secretary. Under these circumstances, when the object and purposes of the association, together with the facts that its entire membership, officers and offices were in the same city and connected with the police department only, are considered the request of Tierney was a reasonable request, he being sick in bed and unable to attend in person to the same. The secretary, instead of complying therewith, investigated the old records and discovering Tierney's wife designated therein as beneficiary under the prior contract, instructed Stone, the messenger, that the former designation of Mrs. Tierney was sufficient and that it was unnecessary to designate her under the new contract. This information was conveyed to Tierney directly from the officer in charge. Here was a meeting of the minds of the parties on the subject matter, the one

desiring to designate his wife, the other, a compe-
tent officer of the association, keeper of the records and
seal thereof, believing her to be designated, instructing
him in good faith that his desire was accomplished and
then stood a consummated fact.  On this Mr. Tierney
relied, as he had a right to do and passed from this life,
believing that his wife was his properly designated bene-
ficiary, and would receive the benefit.  Nothing more to
accomplish the fact could have been done by Tierney,
confined to his bed as he was, and in fact, the secretary
so believing, as he said, that the former designation
was sufficient, no doubt would have declined to have per-
mitted a designation under this contract had Tierney ac-
tually called in person at his office in that behalf.  Un-
der these circumstances, every consideration of good
conscience and right conduct enforces the conclusion
that by mutual agreement the parties waived all formal-
ities and adopted and ratified the former designation as
and for the designation under the present contract.  This
state of facts certainly constitutes a proper case for the
exercise of the power of a court of equity to brush aside
technicalities and mere matter of form and effectuate
the intention of the parties by treating that as done
which should have been done in order that substantial
justice may prevail.  Our conclusion is that Margaret
Tierney should be decreed the proper beneficiary, and
it is so ordered.

For the reasons given, the judgment is affirmed.
*Bland, P. J.,* and *Goode, J.,* concur.